## Hathaway *versus* Elsbree.

1. Land on which there is residence or cultivation is not the subject of a sale for taxes, as unseated land.

2. Sales under the 41st section of Act of April 29th 1844, for the sale of seated land, pass title only when the land is in fact seated.

3. Unseated land was, at the request of the owner, placed on the *seated list* and taxes so paid for it for several years; such land would not therefore remain as seated until the owners choose to return it as unseated, and if sold before such change, the owner would not be estopped from denying that it was seated.

4. Larimer *v.* McCall, 4 W. & S. 133, Commercial Bank *v.* Woodside, 2 Harris 404, and Milliken *v.* Benedict, 8 Barr 169, criticised.

5. Land was placed on the seated list by the owner and was sold for taxes as *seated* after it had become *unseated. Held,* that the sale was void.

6. The assessor returned land "unimproved;" the court properly refused to allow him to testify his meaning in using that word.

7. No particular words are required to describe seated or unseated land, whatever shows it to be one or the other is sufficient. "Unimproved" describes unseated land.

March 11th 1867. Before WOODWARD, C. J., THOMPSON, STRONG and AGNEW, JJ. READ, J., sick.

Error to the Court of Common Pleas of *Bradford county.*

This was an action of ejectment, commenced April 26th 1864, by Nathan C. Elsbree against Charles R. Barton and Oliver Adams, for 1400 acres of land in Wells and South Creek townships. The court afterwards directed the names of Calvin Hathaway and others, heirs of Samuel G. Hathaway, deceased, to be placed on the record as defendants.

The title to the land in question being in Jesse Lane and Joshua Simmons, they, on the 19th of December 1850, conveyed it to George Dunham, who, on the 12th of February, conveyed an undivided half of the tract to Bradley Griffin. On the 18th of August 1854 Dunham conveyed his undivided half to Samuel G. Hathaway, and on the 22d of January 1855 Griffin mortgaged his undivided half to Hathaway to secure the payment of $7800.

The plaintiff claimed under a deed dated December 9th 1862, from the treasurer of Bradford county to him, for the land as sold for taxes for the years 1859 and 1860, assessed on it as *seated* land in the name of Hathaway and Griffin.

On the trial, before Streeter, P. J., plaintiff offered to show "that in 1852, at the instance and request of the then owners of the land, it was assessed and taxed as seated land, and so continued to be assessed and taxed by the consent of the successive owners thereof, down to the time of the sale of the same for the non-payment of taxes; under which sale the plaintiff now claims title;" which was objected to by the defendants, but admitted by the court, and an exception taken.

The plaintiff then gave in evidence the assessment of the land

[Hathaway v. Elsbree.]

from 1853 to 1855 inclusive, in the name of Dunham, as "unimproved" and "timber land;" from 1856 to 1860, inclusive, in the name of Hathaway and Griffin, as "unimproved" and "timber land."

The plaintiffs offered also to prove that the lands in question were duly returned by the collectors for the non-payment of taxes for 1857 and 1858; that the lands were properly described and advertised as seated land, and prior to the sale the taxes were paid by the then owners and present defendants: also, the certificate of the commissioners to the treasurer of unpaid taxes, requiring the treasurer to sell the lands, which did not show on its face that the lands were seated; also, the treasurer's deeds to plaintiff, for the land in dispute, dated December 9th 1862; also, the notices of the treasurer to Hathaway and Griffin, dated June 12th 1862, that the land had been "sold for the non-payment of taxes assessed thereon, agreeably to the Act of Assembly," the notices having been served by George Dunham, and having been received by him from the plaintiff, who assisted him to compare them with the copies.

These offers were objected to by the defendants, but admitted, and exceptions severally taken.

The plaintiff also proved the payment of the taxes for 1857 and 1858, by an agent of Hathaway and Griffin; the witness saying that he did not know whether they were taxed as seated or unseated. There was evidence also, that Griffin himself had paid taxes for 1856. He also gave in evidence the treasurer's sale-book, containing "treasurer's sale of seated lands, June 1862," showing the sale of the land in dispute for taxes of 1859 and 1860, to N. C. Elsbree. The plaintiff also proved by the clerk of the commissioners that the land was returned in the seated list.

Dunham, the former owner, testified on the part of the plaintiff, that in 1852, after he had sold an interest in the land to Griffin, with the assent of Griffin, he had the land "put in as seated land," and that from that time till he sold he paid taxes as seated lands. He testified also, that in 1850, when he bought, there were two log houses, no one living in them, and no clearing; that he built a small frame house, to board hands when cutting logs, and a temporary barn, and put a family into the house; one of the log houses was burned in 1852; and that he had sold 100 acres to a man named Stage.

The defendants then offered to prove that the land in question was unseated in 1854, and has remained so ever since; and that the assessor assessed the same as such for the year 1859. The offer was objected to by the plaintiff, rejected by the court, and an exception taken.

They gave evidence that the lands were unimproved, and no person had been about the lands for twelve years; that there had

[Hathaway *v.* Elsbree.]

been a little clearing which had been permitted to grow up; that the log houses had been burned and rotted down twelve years ago; that Stage had taken a crop off part of his 100 acres in 1853, had never used it since, and it had "been growing up to brush ever since;" that the frame house of Dunham had been put there for a lumbering-house, and had not been occupied since 1853; that in 1854 the windows, door and upper floor, &c., were taken out.

The defendants gave in evidence also the following letter to Robert T. Turner, Hathaway's agent:—

"Towanda, July 11th 1863.

" Mr. Robert T. Turner.

"Dear Sir: Yours of July 10th is at hand. As you say there has been a sale of the Hathaway and Griffin lands, I will make a bill of the taxes at my earliest convenience. Hathaway has one year from time of notice to redeem the lands, and as you say he has not been notified yet, he has plenty of time. I will send you a bill as soon as I have time to make it out.

"FRANCIS WATTS, Treasurer."

The plaintiff submitted the following points:—

1. Although there was in the year 1858 no such improvement upon the land as would subject it to be assessed as seated land, yet if the jury believe that the land was taken from the unseated list and placed upon the seated list, at the request of George Dunham and Bradley Griffin, the then owners, and by the assent of the county commissioners, and so continued to be assessed with the knowledge of Hathaway and Griffin, down to and including the assessment for 1859 and 1860, the land might legally be sold as seated lands.

3. Nothing in the letter of Francis Watts to Robert Turner, dated July 11th 1863, will impair or defeat the title which the plaintiff would otherwise acquire to said lands.

4. The notices given in evidence, if the description of the lands be substantially correct, contain all the facts that the statute requires the treasurer to give notice of to the owner.

5. If the jury believe that George Dunham, with the assent of the treasurer, served the notices upon the owners, such service was good under the statutes.

The court affirmed these points.

The defendants submitted the following points:—

2. The evidence fully establishes the fact that the land in dispute at the time of assessment for the years 1859 and 1860 was unseated land, and was assessed as such throughout, and could not be sold as seated; and therefore the plaintiff is not entitled to recover.

3. If the jury believe the land in question was sold by the

[Hathaway v. Elsbree.]

treasurer for a greater amount than the taxes legally assessed for the years 1859 and 1860, and no refunding bond was given by the plaintiff, then he is not entitled to recover; and that in ascertaining the amount due, the jury ought not to bring into consideration any township or school tax, unless the same has been returned to the county commissioners according to law—notwithstanding such return was given in evidence to the jury.

4. The notices given in evidence as notices from the treasurer to Hathaway and Griffin, the owners of the land sold for taxes, are not such notices as the law requires; and therefore the plaintiff is not entitled to recover.

5. It is not competent for the treasurer to make the purchaser (the plaintiff in this suit) his agent to serve the notices required by statute.

6. The return of the assessors of the lands as unimproved, was a return of the lands as unseated, and the act of the county commissioners in assessing a tax on them on such return for the years 1859 and 1860, as seated, was without authority of law, and gave the treasurer no jurisdiction to sell the lands.

The court refused the 2d, 3d, 4th and 6th points, and affirmed the 5th, adding, "It states a correct proposition of law, but there is no evidence of which it can be predicated."

The court also charged amongst other things: "The owner of a tract of land which is unseated may return it as seated; or if assessed as seated, he may consent that it shall be treated as a seated tract, and when so assessed and treated by the owner, it has all the essentials of a seated tract, and may legally be sold for the non-payment of taxes under the provisions of the Act of the 27th of April 1844. * * *

"If you find from all the evidence on this point that the owners of the land consented to its being returned and taxed as seated lands, then we instruct you that upon this branch of the case the plaintiff is entitled to recover. * * *

"If they (the defendants) did know that their lands were returned and taxed as seated, and consent to it, or acquiesce in it, then the plaintiff is entitled to recover, provided notice of the sale was given to the owners by the treasurer in accordance with the provisions of the Act of Assembly.

"We instruct you that the notice given in evidence is sufficient in form and substance," * * * and "the notice was sufficient, if true copies were served upon the owners of the land."

There was a verdict for the plaintiff for one undivided half of the land, and for the defendants for the other half.

The defendants having removed the case to the Supreme Court, assigned for error the rulings of the court on the evidence, the answers to the points of each party, and the portions of the charge given above.

[Hathaway *v.* Elsbree.]

*Hon. Hiram Gray,* of N. Y., for plaintiff in error.—Proceedings under which lands are taxed and their title forfeited for the non-payment of taxes, depend upon statute law in derogation of the common law; such statutes are to be construed strictly, each requisite must be strictly complied with: Cox *v.* Grant, 1 Yeates 165; Miller *v.* Hale, 2 Casey 432, 437; Monongahela Nav. Co. *v.* Blair, 4 Id. 71–79; Atkins *v.* Kennan, 20 Wend. 240–248; Bloom *v.* Burdick, 1 Hill 130, 141, 142; Sharp *v.* Spier, 4 Id. 76, 86; Stryker *v.* Kelly, 2 Denio 323–329, 330–336; 1 Kent's Com., 3d ed. 466, n. a; 9th ed. 625, n. a; Reynolds *v.* Lounsbury, 6 Hill 534, 536; Commonwealth *v.* Moltz, 10 Barr 527, 531, 532; Arthurs *v.* Smithers, 2 Wright 40. The tax-books are open to be proved erroneous: Laird *v.* Heister, 12 Harris 452, 463; Foster *v.* McDivit, 9 Watts 347.

The return may be read in the light of extrinsic circumstances to ascertain what the assessors meant: 1 Greenlf. Ev. §§ 277, 288.

The only authority for selling seated lands is derived from the Act of April 29th 1844, § 41, Purd. 954, pl. 148, Pamph. L. 501; it directs that "the said lands *shall be sold as unseated* lands are now sold:" Striker *v.* Kelly, 2 Denio 323; Varick *v.* Tallman, 2 Barb. Sup. Ct. Rep. 113; Beekman *v.* Bigham Seldon, Court of Appeals 366, 367 & 368; Borland *v.* Nichols, 2 Jones 38, 45; Monongahela Nav. Co. *v.* Blair, 8 Harris 71, 78, 79.

The notices should have stated when and for what amount the land was sold: Clark *v.* Everley, 8 W. & S. 226, 228.

*U. Mercur* and *H. W. Patrick,* for defendants in error.—All mere irregularities are cured by the Act of March 13th 1815, Purd. 992, pl. 18, 6 Sm. L. 299; Miller *v.* Hale, 2 Casey 437; Act of 29th April 1844, *supra;* Milliken *v.* Benedict, 8 Barr 169; Larimer *v.* McCall, 4 W. & S. 133; Harper *v.* Mechanics' Bank, 7 Id. 214; Clark *v.* Dangon, 2 Jones 91; Kennedy *v.* Daly, 6 Watts 273; Arthurs *v.* Smithers, 2 Wright 40; Kerns *v.* Swope, 2 Watts 78; Jaques *v.* Weeks, 7 Id. 266; Miller *v.* Cresson, 5 W. & S. 284; Flagg *v.* Mann, 2 Sumner 486, 552; Burns *v.* McChristie, 3 Pa. R. 67; Bellas *v.* McCarty, 10 Watts 26.

The opinion of the court was delivered, May 13th 1867, by

THOMPSON, J.—The plaintiff below claimed the lands in controversy by virtue of a sale for taxes under the 41st section of the Act of 29th April 1844. Previously to the passage of this act, it is well known that property on which there was either residence or cultivation, or both, was not the subject of a sale for taxes. The provisions of the section are new, and up to this time but few sales have been had under it. We must regard the act as *sui generis* to some extent at least, a distinct system, operating

on a different class of property from the Act of 1815, for the sale of unseated lands, and hold sales under it as we have held those made under the Act of 1815, only efficient to pass title when the property is in fact what the sale professes it to be when it takes place.    In other words, as the sale of seated lands sold as unseated passes no title, so unseated lands sold as seated should give none.    It is undoubtedly the actual character of unseated which gives jurisdiction to sell unseated lands for taxes, and why shall not the same rule hold in the case of seated, namely, that it is the character which it actually possesses which gives jurisdiction to sell under the Act of 1844 ?    I admit that it might be difficult to point out an evil in selling unseated lands under the provisions of this act, beyond the inconvenience of giving the required notice that a sale has taken place ; but this would no doubt be developed if practised.    A more conclusive answer, however, to such an argument is, *ita lex scripta est.*    We think we are bound, and that it is the wisest course, also, to adhere to what was evidently intended by each of these enactments, viz. that under the one only unseated lands were to be sold, and the other seated.    This I believe to be the professional idea throughout the Commonwealth. In Arthurs *v.* Smithers, 2 Wright 411, the supposed defect in the sale insisted on there was, that the land was unseated ; but the defence failed only because the fact was not so, there being a dereliction of possession for but about a year before the tax was assessed for which it was sold.    I cite that case now, only to show to some extent the professional sense in regard to the point, viz. that if it had been unseated, the sale as seated would not have been good.

In the case in hand, it was conceded by court and counsel, and so found by the jury, that the land in question was *unseated* in fact when the taxes were assessed.    The offer and reception of the evidence to show that in 1852 the land was returned by a part owner as *seated,* and therefore to be treated as seated, was itself a concession that it was unseated, else why offer the testimony ?    Although at that time it was not improper to return the land as seated, because the owners were actually in possession, occupying it in lumbering, and had a house or two, and barn on it, and a family occupied the houses for the accommodation of the lumbermen, yet the occupation was only temporary, was soon abandoned, and what little improvement had been made was suffered to grow up into brush, and the houses and barn became dilapidated and partly, if not entirely destroyed, and the property had resumed its native or wild state, long before the taxes were assessed upon which it was sold.    Hence the necessity of establishing a seated character constructively, if not actually, and for this the act of Dunham, with the assent of his cotenant in returning it as seated, was given in evidence.    The

[Hathaway *v.* Elsbree.]

testimony was to establish the position, that if the land had been once placed on the seated list, and the taxes so paid for several years, it must so remain until they, or the subsequent owners should choose to return it as unseated, and if sold before such change, the owners would be estopped from denying that it was seated. Here, we think, was an error, and which pervaded the whole case.

In the first place the land was never returned as seated, but in 1852, when it was not improper so to consider it. After this the occupancy ceased in that year or perhaps the next ; no instructions were afterwards given by anybody, and certainly not by the present owners, in what character to assess it. It was left thereafter to the assessors to deal with it as required by law. Accordingly it was returned by them some years as " timber lands," sometimes as " unimproved," and was so returned at the triennial assessment of 1858, and so assessed in 1859–60, with the taxes for which it was sold, but never returned as seated, excepting about the years 1852–53. If the fact even was, that the defendants or those under whom they claim as heirs or otherwise, had verbally directed it to be placed on the seated list, I see not how the plaintiff could claim this as an estoppel against showing that it was unseated, without showing, what he did not, that he was misled by the act, and was induced thereby to part with his money in the purchase of the land, and that it would be a fraud upon him, if they were permitted now to allege the contrary. This would be essential to raise an equitable estoppel. The act of so returning the land could not operate as an estoppel on any other ground. It was not a contract, nor a representation that could so operate, on independent principles. It did not express the fact that for the years 1859–60 it was seated. It amounted to nothing if not an estoppel. But if a return could so conclude the owner, and might be set up to sustain a sale made contrary to the intent of the statute, then the tax-title could be made to rest on parol testimony for its validity—upon frail memory of mere deductions, growing more frail and uncertain every day. Titles by public sales cannot be made to stand on any such grounds.

This testimony was predicated of certain exceptional cases, such as Larimer *v.* McCall, 4 W. & S. 133 ; The Commercial Bank *v.* Woodside, 2 Harris 404 ; and Milliken *v.* Benedict, 8 Barr 169 ; in which it was held, I think much against the spirit of the tax laws, that where an arrangement existed between the county commissioners and owners of unseated lands that they should be placed upon the *seated* list for the convenience of the latter in paying their taxes to the collector instead of the county treasurer, they could not be transferred to the unseated list without notice to him. The reasoning was, that the owner, relying on the assessment, might lose his land if not notified of the

[Hathaway v. Elsbree.]

charge by a sale for taxes, when he had no reason to apprehend any danger of its being sold as unseated. A liberal support was acceded to such arrangements, as is shown by the cases referred to, in order to save titles from being divested for non-payment of taxes. In this case, the rule was made, by the application of the same principle, to operate the other way, and to destroy title. But this was not all, for in order to give it that effect, it is shown to be necessary to such titles to rest them on oral evidence of what took place when the land was returned to the assessor, to bring it within the jurisdiction of the act—constructively even then; while the actual condition was such as to exclude it. Titles must rest on something more substantial than that. The law intends them to have their basis, at least so far as the tax is concerned, on the records in the office of the county commissioners: McCall v. Larimer, *supra*. We think there was no ground for an estoppel in the case, and the land being in fact unseated when assessed for the taxes for which it was sold, the sale was void as seated.

But do the assessment books show that these lands stood on them as seated in 1859–60 ? I think they do not. The triennial assessor of 1858 went to the land to ascertain its character and found it vacant; neither cultivation nor residence on it. The temporary buildings were in ruins, fences gone, and improvements grown up. This describes unseated land—land subject to be sold as such, as many decisions show. He returned it " unimproved," and the court would not let him interpret his meaning in the use of the word. That was all right. But the word defined what he had seen and described, and that was unseated land. It was returned as " unimproved" for 1859–60. To say this was a return of seated, is a mistake of the meaning of words. If land be not improved in any way, and the term used is just that general, it is equivalent to saying there is neither cultivation nor residence on it. There is no law requiring any particular word or words to be used in describing the character of seated or unseated— whatever shows it to be the one or the other is sufficient. To return a tract as having so many acres cleared or improved, or so many acres unimproved, describes seated land ; " cleared" and " unimproved," express opposite conditions in the same tract. The former conveys the idea of cultivation, while the latter the absence of that ; a state of nature. When the last term alone is employed in describing the entire tract, it has the same meaning of course as it has when describing the condition of a portion of a tract. It means uncultivated and unseated. Thus, in the case in hand, the evidence in the office was that the land was unseated. The sale had nothing in fact to sustain it, in or out of the record. Following the idea of the court to its logical results, that the land was to be regarded as constructively seated, produced a most

[Hathaway *v.* Elsbree.]

anomalous result in this case. One part owner was not visited with notice that it had ever been returned as seated by an owner; and the other was. Consequently there was a verdict for the plaintiff for an undivided half of the land as *seated*, and for the defendants, of an undivided half as *unseated*. It is quite certain that there is something wrong in the administration of a law when such inconsistent results are the consequence.

We think the court erred in all it said or did on the aspects of the case we have noticed, and hence the judgment must be reversed. The other points are not material in this view of the case; but we may say we think the notice of the sale was well enough established to have been a compliance with the act, if there had been a proper case for it to have operated on. If the plaintiff have any reason to think he can do better in another action, we give him the opportunity by granting a *venire de novo*.

Judgment reversed, and *venire de novo* awarded.