B. HOLLOWAY v. JOHN JONES ET AL.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF LUZERNE COUNTY.

Argued April 17, 1891—Decided October 5, 1891.

1. The testimony of the plaintiff himself, in an action of ejectment, show-
ing that he held the land in dispute under a sale thereof for taxes as
seated land, when in point of fact it was unseated, it was not error to
instruct the jury that he had not shown such title as gave him a right to
a verdict.

2. The act of April 9, 1873, P. L. 583, relating to the assessment of un-
seated lands in Luzerne county, was repealed by the act of May 1, 1876,
P. L. 192; and, as the tax-sale in this case was long before the act of
June 3, 1885, P. L. 71, was passed, the said act, relating only to sales
made after its passage, was without application.

3. Nor, was the fact that the plaintiff cut a number of trees upon the land

Statement of Facts.

at a certain date, sufficient of itself to show such actual and peaceable possession as entitled him to the benefit of the rule that color of title merely, will authorize a recovery against mere forcible intruders.

4. The record of a proceeding by the defendants' grantors for an injunction against the plaintiff, terminating in a refusal of the decree prayed for, on the ground that, as there was a doubt about the title it should first be tried in an action at law, was not evidence of an adjudication of the title against the defendants.

5. It was not error to admit, on the offer of the defendants, the will of a former owner of the land devising it as part of his residuary estate to defendants' grantors, for, though no title was shown in the testator, the offer was competent evidence as showing color of title and that defendants were not mere intruders.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 387 January Term 1891, Sup. Ct.; court below, No. 488 October Term 1888, C. P.

On August 11, 1888, Byron Holloway, as trustee for A. B. and A. L. Davenport, brought ejectment against John Jones, M. Bergan, Wm. H. Cornell and Henry Cornell, to recover a tract of land in the township of Plymouth, containing three hundred and fourteen acres more or less, being a part of a tract in the warrantee name of Phineas Bradley. Issue.

At the trial on February 13, 1891, it was made to appear that in the spring of 1880, A. L. and A. B. Davenport, brothers, bought and took possession of 200 acres of the Phineas Bradley tract from D. D. O'Neill, who had bought the same at a treasurers' sale for taxes in 1878; and that in 1886, the defendants went into possession of the northern end of the Phineas Bradley tract. A. L. Davenport having testified to the possession taken by them of the land in dispute, under a deed to them from the county commissioners in 1885, after a tax sale thereof in 1880, was asked:

Q. What proceedings were taken, if any, to dispossess you from that land, legal proceedings?

Objected to.

Plaintiff's counsel: The purpose of this is to show that the possession of the defendants of the land in question was by virtue of an injunction obtained by one H. H. Harvey and William J. Harvey; that, pending that injunction, the plaintiff's

possession of the whole tract in question was taken from him by virtue of the injunction; that a subsequent arrest was made of the defendants for cutting timber on, and for attempting to take forcible possession of the land of which the plaintiff was in possession; and further, to show that the injunction that had been obtained was subsequently dissolved by the court.

By the court: Objection sustained; exception.[1]

Afterward, the plaintiff offered the record of a proceeding for an injunction, begun December 19, 1887 (?), by Michael Bergan et al. against A. L. and A. B. Davenport, for the purpose of showing: "That the plaintiffs [defendants?] by virtue of the injunction obtained at the instance of the Harveys took possession of the northern portion of this tract, the defendants [plaintiff?] previous to that time being in possession of the whole, and by virtue of that injunction instituted those proceedings without color of title, they being, as we allege, mere intruders and trespassers; and in furtherance of this offer, I also propose to prove that a criminal prosecution was instituted against those defendants for entering upon and cutting timber on the land in controversy; that a petition was made out in their behalf and a hearing had, habeas corpus hearing, before Judge Woodward; and that they were discharged pending the proceedings upon the injunction which had been previously granted. To be followed by evidence to show that the injunction was dissolved, and that they are simply intruders and trespassers on the land in controversy." Objected to.

By the court: We sustain the objection. We think you will have to come down to the question of whether or not you have title to the land described in the writ; that is the issue you will have to try; exception.[2]

The case presented by the plaintiff's testimony sufficiently appears in the charge of the court below.

The defendants, in their case in chief, offered, inter alia, Will Book, J., p. 221, will of Jameson Harvey, dated March 21, 1884, admitted to probate July 14, 1885, devising the testator's residuary estate, including the land in controversy, to Wm. J. and H. H. Harvey, grantors to the defendants.

Objected, that no title had been shown in Jameson Harvey.

By the court: As we stated at the outset, this is competent

Charge of Court below.

evidence on behalf of the defendants, for the purpose of show-
ing color of title; it does not show title, perhaps, but it shows
color of title, and for that purpose we admit it; exception.[3]

At the close of the testimony, the plaintiff presented the fol-
lowing points for instruction:

1. That from 1879 to the spring of 1886, A. B. Davenport
and A. L. Davenport, for whose use this action was brought,
were in peaceable possession of the tract of land in the war-
rantee name of Phineas Bradley, located in the township of
Plymouth, said county.

2. That their possession and title to said lands were in pur-
suance of purchases made by them at tax sales, and the assess-
ment to them of the lands, and of their payment of taxes there-
on since said purchases.

3. That the law clothes a purchaser at a tax sale with the
constructive possession of the land purchased, and the pro-
duction by them of the commissioners' or treasurer's deed is
sufficient to entitle them to recover as against the defendants,
whom the uncontradicted testimony shows to be trespassers
and without title of any kind.

4. As against them, the verdict of the jury should be for the
plaintiff, for the land described in the writ.

The court, RICE, P. J., charged the jury in part as follows:

The plaintiff, Byron Holloway, brings an action of eject-
ment for a part of what was originally the Phineas Bradley
tract of land in Plymouth township. The part for which he
brings this action, has been spoken of during the trial of the
case as the northern end of the tract. It is that part which is
north of what has been spoken of as the division line which
was painted by Mr. Jameson Harvey some years ago.

Now, in an action of ejectment the general rule is, that the
plaintiff must recover, if he recovers at all, upon the strength
of his own title, and not upon the weakness of his adversary's;
the law respects the possession of land to that extent. There
are exceptions to this; as, for example, where the man is in
the peaceable possession of a piece of land, and another sur-
reptitiously, or by fraud, or by force puts him out of possession,
there the person ejected may recover upon the strength of his
possession without showing title, unless the defendant in pos-

session can show that he has a better title. It is contended upon the part of the plaintiff that this case comes within that principle; that, even though the plaintiff has not shown a valid, legal title to the land in controversy, still, he has shown such a right as entitles him to recover, as against these particular defendants. We are unable to agree with the counsel who has so earnestly argued this proposition during the trial and at the conclusion of the trial.

Under the testimony, it appears that in 1878, about the first of November, two hundred acres of the Phineas Bradley tract of land was sold at treasurer's sale to D. D. O'Neill for taxes assessed in the years 1874 and 1875 in the unseated list as unseated land. This deed to Mr. O'Neill was subsequently assigned to A. L. and A. B. Davenport, and some time in 1879 they went into possession. But, according to the testimony of Mr. Davenport himself, they limited their claim at that time to that portion of the tract which lies below or south of the division line, although he refuses to recognize the existence of such a line. He admits, however, that it was not until 1883 that they asserted any claim to any portion of the Phineas Bradley tract north of that line, and not until the fall of 1885 did they attempt to exercise any acts of ownership there; they allege that at that time they did cut some timber upon the tract, but that they were stopped. [In 1886 these defendants, claiming the right under Mr. Jameson Harvey, went into possession of the northern end of the tract, erected a saw-mill and other buildings, and so far as appears have been in possession from that time until the present. We say to you, that under this testimony there was no such possession shown in the plaintiff, Holloway, or in the Davenports for whom he holds as trustee, prior to 1886, as brings their case within the principle contended for by the plaintiff; in other words, that they did not have such actual, peaceable and exclusive possession, at that time, as would protect them as against the defendants, or make the defendants occupy the position of mere trespassers and intruders.] [4]

If that principle does not apply, then the question arises, has the plaintiff shown such a title in law as entitles him to a verdict at your hands, and a judgment of the court? We have already spoken of the title derived under the O'Neill sale; that

appears to have been the title only to the two hundred acres, or thereabouts, at the south end of the tract. We come next to the title derived by the sale of the commissioners in November, 1885, and we think, after as careful a consideration of the case as we have been able to give, that the plaintiff's case must rest upon the validity or invalidity of that sale.

In this state, land is divided, for the purposes of taxation, as you all know, into two classes, seated and unseated lands. Seated land is such as is redeemed from a state of nature by residence and cultivation, or by either. It would appear that some time about 1864 or 1865 there was a residence upon the lower end of the tract, a saw-mill there and a small clearing. Whether that was of such a nature as to render the whole tract seated, or whether it only rendered the southern portion of the tract seated, seems to us immaterial at the present time. If that residence was afterwards abandoned and the land was allowed to run wild again, it would become, under the definition of the law, unseated. Now, this is a fact which, if there were any dispute about it at all, would be for the jury to decide. Even if it depended solely upon the credibility of the defendants' witnesses, it would be for the jury to decide. But, according to the testimony of Mr. Davenport himself, who with his brother is undoubtedly the real owner of the title which is asserted here, it was in 1877 wild land. It presented that appearance not only to the assessor, but to any person who would look at it. The seating of it years before did not make it seated land at that time, under the testimony in the case.

There are two methods of selling land for taxes; one method applying to seated land and another method applying to unseated land. In one case, the courts say in the case of taxes assessed upon seated land, that the owner is the debtor for the taxes; in the case of taxes assessed upon unseated land, the land itself is the debtor and is charged with these taxes. Unseated land may be assessed with taxes and sold in any name which sufficiently identifies it. It may be assessed and sold in the name of the real owner, or of the original warrantee, or it may be sold by any other description which fully and sufficiently identifies it. These taxes were assessed in 1877 and 1878. They were assessed, not against the land in the name of Phineas Bradley, but against Daniel Seabert. It is claimed that

Charge of Court below.

this was a valid assessment of the land; that this was a sufficient identification of the land, because Mr. Seybert, Daniel F. Seybert, had become the purchaser of the land some years before from Mrs. A. B. Kulp, who had bought the land at a treasurer's sale in 1868.

There is a serious question in my mind whether or not the name of Daniel Seabert is a sufficient identification of the land, taken by itself alone. Perhaps, under the circumstances, it would be a question of fact for the jury, and, therefore, we do not positively rule the case upon that point. [But there is another principle which is well settled by all the authorities, that where land that is seated is sold as unseated, is assessed and sold as unseated, it passes no title; or where, on the other hand, unseated land is assessed and sold as seated, it passes no title; and, according to the testimony in this case, this land, if it was this land, if it be sufficiently identified by the name of Daniel Seabert as being this land, this land was assessed in 1877 and 1878 in the seated list, and was sold in 1880 as seated land to the commissioners. They held it for five years and then they sold it at public sale to the Davenports, for whom the plaintiff claims. As we have said, under the uncontradicted testimony in the case, at the time that this assessment was made it was unseated land; therefore, there was no authority to assess it as seated land or to sell it as such.] [5]

[We therefore instruct you, for this reason, that the plaintiff has failed to show a title which entitles him to a verdict at your hands, and, under all of the testimony in the case, your verdict should be in favor of the defendants.] [6] We have now put the case in a position where it may be reviewed by the Supreme Court, and if we have made any error it may be corrected.

In view of this disposition of the case, plaintiff's points are answered in the negative and defendants' points are answered in the affirmative. [7]

—The jury returned a verdict for the defendants. Judgment having been entered, the plaintiff took this appeal, assigning for error:

1, 2. The refusal of the plaintiff's offers. [1] [2]

3. The admission of the defendants' offer. [3]

4–6. The portions of the charge embraced in [ ] [4 to 6]

Opinion of the Court.

7. The refusal of the plaintiff's points.[7]

*Mr. Michael Cannon,* for the appellant.

Counsel cited: (1) Gordinier's App., 89 Pa. 528; Frauenthal's App., 100 Pa. 290; Schenck's App., 94 Pa. 37. (2) Schlecht's App., 60 Pa. 175; act of April 9, 1873, P. L. 583; act of June 3, 1885, P. L. 71. (3) Bechdlc v. Lingle, 66 Pa. 38; Cuttle v. Brockway, 32 Pa. 51; Hathaway v. Elsbree, 54 Pa. 503; Earley v. Euwer, 102 Pa. 338; Preswick v. McGrew, 107 Pa. 43; Dikeman v. Parrish, 6 Pa. 222.

*Mr. Alexander Farnham* (with him *Mr. George R. Bedford*), for the appellees.

Counsel cited: Davenport v. Jones, 126 Pa. 271; Hathaway v. Elsbree, 54 Pa. 503; Foster v. McDivit, 9 W. 344; Dikeman v. Parrish, 6 Pa. 222; Emery v. Harrison, 13 Pa. 320; Crum v. Burke, 25 Pa. 377; Troutman v. May, 33 Pa. 455; Hoffman v. Bell, 61 Pa. 444; Preswick v. McGrew, 107 Pa. 43; act of May 1, 1876, P. L. 192, repealing act of April 9, 1873, P. L. 583.

OPINION, MR. JUSTICE GREEN:

In the case of Hathaway v. Elsbree, 54 Pa. 498, followed by Preswick v. McGrew, 107 Pa. 43, we decided that a sale of land for taxes under the forty-first section of the act of April 29, 1844, as seated, which in point of fact was unseated, was a void sale, and passed no title to the purchaser. In the present case the plaintiff's own testimony has established that the tract of land in controversy was sold as seated, and that at the time of the sale it was in fact unseated. As there was no conflicting testimony, the learned court below instructed the jury that the plaintiff had failed to show a title that gave him a right to a verdict, and under all the testimony in the case the defendants were entitled to a verdict, which was accordingly so rendered.

We are of opinion that this instruction was entirely correct. There is no real contention that the plaintiff had shown a sufficient title in himself upon which to ask a verdict. He asked an instruction that he had shown title enough as against a mere intruder who had ejected him by force, but the court very properly instructed the jury that he had shown no possession

of the tract in question, which is north of the division line, which would entitle him to the benefit of that principle. Holloway is only a nominal plaintiff, the real plaintiffs being the two Davenports. On the trial, A. L. Davenport testified that they never had any improvements on the tract north of the division line, and that they had done nothing on the ground, except that they cut some trees in the fall of 1885. Nothing was done but cutting these trees; the ground was not cleared up, no part of it was enclosed, none of it was cultivated, and no buildings or fences were put up. There was no conflicting testimony, and it is too plain for argument that the mere cutting of the trees in 1885 was not such a peaceable and actual possession of the land in dispute as to entitle the Davenports to the benefit of the rule that a color of title only is sufficient against mere forcible intruders.

It also appears in the charge and in the evidence that the plaintiff's claim of title under the O'Neill deed was limited to the part of the Bradley tract south of the division line, which is not involved in this contest. This left the plaintiff with no other claim than that derived from the tax sale of 1880; and as to that, as we have already seen, upon the plaintiff's own testimony, the land in dispute was unequivocally unseated, and the sale of it as seated gave no title to the purchaser. It was returned by the assessor as "unimproved," and this return, it was held in Hathaway v. Elsbree, supra, describes it as unseated. We said in that case that the word "unimproved," when used in the assessor's return, means "uncultivated and unseated;" and we affirmed the court below in refusing to permit the assessor to interpret his meaning in the use of the word. Besides this, A. L. Davenport, one of the real plaintiffs, testified that up to the time of their cutting, in 1885, there was no residence, cultivation, or improvement of any kind on the land in dispute north of the division line, and that it was all in a state of nature, wild and unenclosed; a forest.

The equity proceeding for an injunction, instituted by the Harveys against the Davenports, and the fact that it terminated in a master's report refusing the injunction, was much pressed in the printed argument for the appellants as an adjudication of the question of title now at issue, and adverse to the present appellees. But the slightest examination of that

case and the master's report shows conclusively that it was not an adjudication of the title in any way.  On the contrary, the master expressly refused to decide the question of title, on the distinct ground that, as there was doubt about it on all the evidence, the title must first be tried in an action at law before equity would interfere.  That action is substantially the present proceeding, and the refusal of the injunction in the equity case has no bearing or significance of any kind upon the question of title in this case.  There was no error, therefore, in rejecting the offers of testimony covered by the first and second assignments of error.  Whether this action of ejectment was brought by the plaintiffs in the equity case, or by the Davenports, under compulsory proceedings under the act of June 24, 1885, P. L. 152, is immaterial so far as this subject is concerned.

The third assignment is not sustained, because the will of Jameson Harvey was competent evidence for the purpose of showing color of title in the defendants.  The remaining assignments are disposed of by what has been already said, and they are not sustained.  The act of April 9, 1873, relating to the assessment of unseated lands in Luzerne county, was repealed by the act of May 1, 1876, P. L. 192, and the act of June 3, 1885, P. L. 71, has no application to this case, as it was not passed till long after the sale was made, and relates only to sales made after its passage.

Judgment affirmed.