Lydia E. Kelley, Widow of late Joseph Kelley, deceased, Elmer Kelley, Nelson Kelley, Charles E. Kelley, William T. Kelley and George E. Kelley, by their Guardian, Lydia E. Kelley, the said Elmer, Nelson, Charles E., William T. and George E. Kelley, being heirs and legal representatives of Joseph Kelley, deceased, Appellants, v. Rachel Kelley.

*Will—Vested and contingent estates—Devise.*

Testator by his will gave to his two grandsons J. and G., "at the death of their mother, H.," a certain farm, describing it.  He further directed as follows : "I also further ordain and bequeath that my daughter H. shall have, hold and possess the whole of the above farm, with all the rights and title I now possess, during the term of her natural life ; then and not till then shall my grandchildren, J. and G. aforesaid, possess and enjoy the same ; and furthermore, if in case either of my grandchildren, J. and G., shall die before their mother, or before they arrive at the age of twenty-one years, then the one living shall possess the whole of the above farm, and in case both die before their mother, or before they arrive at the age of twenty-

one years, leaving no issue, then I ordain and bequeath the whole of the above described property," etc.   J. died before his mother, at the age of thirty-five years, leaving a widow to whom he was married after he came of age, and children.   H. subsequently died, and her death was followed by that of G. who left a widow and children in possession of the farm. Ejectment was brought by the widow and children of J.   *Held*, (1) that J. took a vested estate in remainder subject to his mother's life estate; (2) that plaintiffs were entitled to recover one half interest in the property.

*Misjoinder of parties first urged on appeal—Practice, S. C.*

Where no question is raised in the court below, misjoinder of parties cannot be urged on appeal, after a trial on the merits.

*Ejectment—Sheriff's return—Practice—Possession.*

In an action of ejectment where the plaintiff's writ averred a wrongful detention of possession from plaintiffs, and the sheriff returned the writ as served, and the defendants pleaded the general issue, the plaintiffs are not bound to prove affirmatively actual ouster, but they may stand on the presumption which the act of assembly raises in their favor by the sheriff's return.

Argued April 12, 1897.   Appeal, No. 119, Jan. T., 1897, by plaintiffs, from judgment of C. P. Luzerne Co., Feb. T., 1893, No. 57, on verdict for defendant.   Before WILLIAMS, McCOL-LUM, MITCHELL, DEAN and FELL, JJ.   Reversed.

Ejectment for a tract of land in Plymouth township.

The case was tried by WOODWARD, P. J., without a jury, under the provisions of the act of April 22, 1874.

Ezra Howard, the common source of title, died in 1862.

Other facts appear by the opinion of the Supreme Court.

The court entered judgment in favor of defendant.

Exceptions to the court's findings of fact and conclusion of law were dismissed.

*Errors assigned* were in dismissing exceptions.

*William S. McLean*, with him *Thomas D. Shea*, for appellants.—The clause in dispute must be read with the co-ordinate conjunction "and" in place of the disputed "or" in construing it, and thereby prevent the disinherison of the issue of the first takers of the testator's bounty, which disinheritance, from the reading of the whole will, he manifestly never intended: Hauer v. Sheetz, 2 Binney, 545; Holmes v. Holmes, 5 Binney, 252; Scott v. Price, 2 S. & R. 63; Welsh v. Elliott, 13 S. & R. 205; Beltzhoover v. Costen, 7 Pa. 13; Doebler's App., 64 Pa. 14.

Words may be supplied, changed or transposed, if necessary to carry out the intention of the testator: 1 Redfield on Wills, 454, sec. 33; 2 Jarman on Wills, 60; Williams on Executors, 1085; Hallowell's Est., 11 Phila. 55; McKeehan v. Wilson, 53 Pa. 74; Hellerman's App., 115 Pa. 120; Abbott v. Middleton, 21 Beav. 143; Stevens's Est., 164 Pa. 209; Leach v. Micklem, 6 East, 486; Child v. Elsworth, 2 De G. M. & G. 679; Hunt v. Johnson, 10 B. Mon. 342; Creveling v. Jones, 1 Zab. 573.

All the plaintiffs but one are the children of Joseph Kelley, his heirs at law, and, therefore, if there is any doubt as to what the testator meant, the construction of his will should be as conformable as possible to the general rules of inheritance: France's Est., 75 Pa. 220.

And these plaintiffs being the heirs at law of Joseph Kelley, every fair intendment of construction should be made in their favor: Bender v. Dietrick, 7 W. & S. 284; Cowles v. Cowles, 53 Pa. 175.

*Frank W. Wheaton* and *John T. Lenahan,* with them *James L. Lenahan,* for appellee.—The widow is not a proper party plaintiff: Gourley v. Kinney, 66 Pa. 270; Pringle v. Gaw, 5 S. & R. 536.

Before one tenant in common may recover in ejectment against his cotenant, he must show some kind of ouster by the cotenant, actual or constructive: 11 Am. & Eng. Ency. of Law, 1123; White v. Williamson, 2 Grant, 249.

A vested remainder may be divested by a subsequent occurrence: 2 Sharswood & Budd on Real Property, 284–285; White v. Baker, 2 De Gex, F. & J. 55.

Under the circumstances there was no implied gift to children: Weakley v. Rugg, 7 T. R. 322; Barnfield v. Wetton, 2 B. & P. 324; Ranelagh v. Ranelagh, 12 Beav. 200.

Conceding that there are cases in which "or" may be read "and," and in which words may be supplied in a will, the rule is that "words can only be supplied in cases necessary to give effect to the most unquestionable purpose of the testator, hence if a doubt arises that the change would advance the real intent of the testator it cannot be made: " Varner's App., 87 Pa. 427; McKeehan v. Wilson, 53 Pa. 74; Coates v. Hart, 32 Beav. 349; Woodward v. Glasbrook, 2 Vern. 388; 1 Jarman on Wills (6th

Am. ed.), 513; Hawksworth v. Hawksworth, 27 Beav. 1; Nicholson v. Bettle, 57 Pa. 384; Mortimer v. Hartley, 3 De G. & S. 316; 1 Jarman on Wills (6th Am. ed.), 511; 1 Redfield on Wills, 465; Hay v. Earl of Coventry, 3 T. R. 83; Towle v. Delano, 144 Mass. 99; 1 Jarman on Wills (6th Am. ed.), 499; Griffith v. Woodward, 1 Yeates, 316; Cheesman v. Wilt, 1 Yeates, 411; McDonald v. Dunbar et al., 20 W. N. C. 559.

*William S. McLean,* with him *Thomas D. Shea,* for appellants, in reply.—Under the sheriff's return and the defendant's plea of not guilty, prima facie, the defendant held adversely to the plaintiff the lands described in the writ: Bronson v. Lane, 91 Pa. 157.

Since the defendant, consistent with her plea, has set up title to the whole land, and thereby ignored the tenancy in common, even if it were the duty of the plaintiff to prove affirmatively an ouster, it would be too late to take advantage of the omission in a court of error: Hill v. Hill, 43 Pa. 521.

OPINION BY MR. JUSTICE DEAN, July 15, 1897:

This issue is an ejectment for a farm or tract of land, known as the " Gould Farm," in Plymouth township, Luzerne county. It was part of the estate of Ezra Howard, who died in 1862, leaving to survive him a widow and two married daughters, and the children of a deceased daughter; one of the three, Harriet, was married to Thomas Kelley. When her father died, she had two sons living, one, Joseph B., when his grandfather made his will in 1859, was twelve years of age, the other, George M., nine.

Among other bequests in Ezra Howard's will, is the following : " I also give and bequeath to my two grandchildren, Joseph Kelley and George Kelley, sons of Thomas and Harriet Kelley, all that farm known as the 'Gould Farm,' together with the dwelling-house and all and severally the out-buildings belonging thereunto, lying in the township of Plymouth, county of Luzerne and state of Pennsylvania, at the death of their mother, Harriet Kelley; and I also further ordain and bequeath, that my daughter, Harriet Kelley, wife of Thomas Kelley, shall have, hold and possess the whole of the above farm, with all the rights and title I now possess, during the term of her natural life;

then and not till then, shall my grandchildren, Joseph and
George Kelley, aforesaid, possess and enjoy the same; and
furthermore, if in case either of my grandchildren, Joseph
and George Kelley, shall die before their mother, or before they
arrive at the age of twenty-one years, then the one living shall
possess the whole of the above farm, and in case both die before
their mother, or before they arrive at the age of twenty-one
years, leaving no issue, then I ordain and bequeath the whole
of the above described property to my grandchildren, Loretto
Gould, Sarah Gould, Anna Gould, Orange Gould and Elijah
Gould, sons and daughters of Thomas and Hannah Gould afore-
said, and to my two grandsons, Ezra and Sharp Snyder, being
seven in number, share and share alike." Joseph Kelley died
in 1882, before his mother, at the age of thirty-five years, leav-
ing a widow, to whom he was married after he came of age, and
children. The mother died in 1886. George M. died after his
mother, leaving a widow and children. They are in possession
of and claim the " Gould Farm," to the exclusion of the widow
and children of Joseph, these plaintiffs, who bring ejectment
for the undivided half. Decision of the issue was submitted,
under the act of 1874, to the judge of the court of common pleas,
who under his interpretation of the clause in the will just quoted,
entered judgment for defendant, and plaintiffs appeal, assign-
ing for error the conclusion of law by the court.

What was the intent of the testator, as expressed in his will?
We must ascertain his intent from his words, but in so doing,
we must adopt the sense in which he used the words. That is,
if in the use of certain words, he attributed to them a meaning
different from the lexicographer's definition, we must adopt the
testator's meaning; the educated man or lawyer might have
chosen different words and a wholly different collocation of
them, to express the same intent; but this is not controlling, if
the intent be manifest, though that intent is not in exact accord
with technical definition. But few wills drafted by illiterate
men, as was this one, could be carried into effect according to
their real intent, if interpreted strictly by pedagogic rules.
And in arriving at the true meaning of such language as is used
in this will, we must take into view the surroundings of the
testator at the date of his will, the objects of his bounty, and
the character and value of his estate.

It is apparent, from a perusal of this will, the first thought was of his wife; he intended that during her life she should be made as comfortable as his estate warranted; then, the second, and the dominant thought, is equality of distribution among his children and grandchildren per stirpes, as nearly as possible. Mary Snyder, one of the daughters, at the date of the will, was dead, leaving two children; these were devised what would probably have been their mother's share had she been living; to his living daughter, Hannah Gould, he devised a farm, subject to a life estate in her aged mother. To his two grandsons, Joseph and George Kelley, sons of his daughter Harriet, he devised the farm in dispute, subject to a life estate in their mother. Up to this point it is all plain sailing, but then comes troubled waters; it occurred to testator that it will be twelve years before one of these boys becomes of age, and nine years before the other reaches the same period; what if one should die before coming of age, and his mother still be living, then the father, Thomas Kelley, comes into enjoyment of the son's estate; looking through the whole will, there is a manifest intention to exclude his son-in-law from any participation in the property. He devises to his daughter, Hannah Gould, absolutely, a farm, leaving open to her husband, Thomas Gould, all his rights as tenant by the curtesy, or under the intestate laws; but in the provision for Harriet, he effectually shuts out her husband from all claim. It then occurring to testator that the death of either grandson before twenty-one, the mother still living, will give Thomas Kelly, the father, an interest, he undertakes to guard against that result, and says, in case either "shall die before their mother or before they arrive at the age of twenty-one years, then the one living shall possess the whole of above farm." The contingency did not happen. By the juxtaposition and grouping of the words in the paragraph, the contingency intended to be provided for was a disposition of the estate in case of death of one of the devisees during minority; and to carry out the intent, the three events, death of one, minority, and survivorship of the mother must concur. And while the intent would have been indisputable if the conjunctive "and" had been used, yet the use of the disjunctive "or" in that connection does not obscure or pervert it; in fact, taking the whole paragraph, the intent is plain by the use of either conjunction or without either. That

express contingency which he sought to anticipate and provide for did not happen; there was not the death of either during minority; he was not thinking of a provision disposing of the estate after majority, and in that immediate connection says nothing on that subject, for he had already provided for that in the preceding part of the clause, devising them an absolute estate, subject to the life estate of their mother. If the testator could have foreseen that neither of his grandsons would die during minority, no such provision would have appeared in his will, for, as it has turned out, it is useless.

Then comes the second thought: he has provided for one contingency, the death of either before twenty-one, the mother living, by devolving the whole estate upon the surviving brother. But another contingency occurs to him; suppose both should die before twenty-one, their mother surviving, then the father, Thomas Kelley, would come into a still larger portion of his estate; he seeks further to guard against this result, and says: "In case both die before their mother, or before they arrive at the age of twenty-one years, leaving no issue, then the estate shall go to collateral relatives." To save, if possible, such an undesirable result, he adds one more obstacle, "leaving no issue." Although it was improbable that boys under twenty-one would marry and have children before that age, still it was a possibility, and to exclude the father, and make the contingency of their share falling to cousins who had already been provided for more remote, he adds another condition. To give effect to this intent four events must concur; the death of George before twenty-one, the death of Joseph before twenty-one, failure of issue as to both and survivorship of the mother.

As in the first provision, each event must concur with the other before the particular intent can be given effect. This contingency in the mind of the testator thus expressly provided for never did happen; they did not both die before twenty-one, without issue, leaving surviving their mother. The provision, so far as it affects the distribution of the estate, might as well have been left out. Both sons reached the age of twenty-one years; nothing in the will divests their estate after that happens; it is theirs absolutely, subject only to the life estate of the mother. Joseph died at the age of thirty-five years, leaving a widow and children, his mother being still living; therefore

his undivided interest in the farm then passed under the intestate laws, and after the death of Joseph's mother his children were entitled to possession.

No other interpretation of this paragraph of the will can be adopted without leading to unreasonable conclusions, and however illiterate may have been this testator, an entirely reasonable intent is obvious; nor does his mode of expression to any great degree obscure his intent. To give the word "or" the effect urged by appellee and adopted by the court below leads to this conclusion; if the sons marry, have issue and die before twenty-one, their mother surviving, such issue shall inherit their father's estate; but if they reach the age of twenty-one, then marry and die, leaving issue, their mother surviving, the estate shall not go to such issue, but to their cousins. The testator had no such absurd intent; yet this, if appellee's interpretation be adopted, would have been the result if the mother had survived both sons; the children of both would have been disinherited because their parents married in manhood and died before their mother; both, however, would have saved the inheritance if they had married in infancy, and had begotten children before the age of twenty-one years. It was not the object of testator to put a premium on boyish procreation; the eventual disposition of the property, in case of the death of the devisees or either of them, during minority, was all he sought to provide for; and the contingencies not having happened, the sweeping devise of a fee subject to a life estate, in the first part of the clause, remained in full force as to both grandsons.

The many authorities cited by counsel for appellant in which the word "or" has been read "and," and by counsel for appellee where the court has refused to treat it other than disjunctive, are not without weight, and we have considered them; but in not a single one of the cases cited has the will under consideration borne such resemblance to the one before us as to cause us to adopt it as a pointed and binding precedent. The case of Holmes v. Holmes, 5 Binney, 252, approaches nearest our case, and the whole question is there so fully and ably discussed by each of the three judges who heard the cause that we need only call attention to it. The majority of the court, in interpreting that will, read the word "or," "and." It is there admitted that it is useless to cite cases on wills as authority

for interpretation unless the instruments and surroundings of the testator are similar. That, and the long line of cases following it, have established the principle, that no inapt words, nor any misuse of proper words, will be destructive of the plain intent, as ascertained from the whole will.

As to the point raised for the first time on argument in this court that the widow was not a proper party plaintiff, that should have been taken advantage of in the court below; after a hearing and judgment on the merits, such misjoinder will not be held fatal here.

Also, the point is made that plaintiffs were bound to prove affirmatively actual ouster from possession. We do not think so. The plaintiff's writ served on defendants averred a wrongful detention of possession from plaintiffs; the sheriff's return and defendants' plea of the general issue was prima facie evidence of adverse possession by defendants. No evidence was offered by defendants to rebut this presumption of hostile possession, and, therefore, plaintiffs, without further evidence, could stand on the presumption which the act of assembly raises in their favor by the sheriff's return.

It is directed that the judgment of the court below be reversed, and judgment is now entered in favor of plaintiffs and against defendants for the undivided one half of the land described in the writ.