## Gay Estate

564

■■■■■■■■■■■■■■
■■■■■■■■
■■■■■■■■■■■■■■
■■■■■■■■■■■■■■

Before Sinkler, P. J., Klein, Bolger, Hunter and Lefever, JJ.

*Eli Louis Cooper*, for exceptants.

*William H. S. Wells*, of *Saul, Ewing, Remick & Saul*, contra.

HUNTER, J., May 4, 1951.—Deborah A. Gay died March 29, 1915, and by her will gave certain annuities and income to her children and grandchildren. At the death of the survivor of her six children on June 5, 1931, the will was construed to create trusts of $25,000 each for 15 grandchildren for their lives respectively, and to give the residue of the estate to these same grandchildren absolutely. See Gay's Estate, 310 Pa. 11.

No citation of authority is necessary to show the absolute preference of these legacies over the gift of residue, and this preference was clearly expressed in the adjudication of Van Dusen, J., filed December 4, 1931, affirmed by the Supreme Court, wherein the trust legacies were first awarded, and the "balance then remaining" to the residuary legatees.

The schedule of distribution dated June 21, 1932, annexed to the above adjudication, set up the 15 $25,000 trust legacies as participations in a pool of assets, but did not state that they were preferred participations.

These pooled assets in the amount of $546,563.97 were nonliquid and included $499,100 of mortgages and $20,615 of foreclosed real estate which were carried at their account value without reappraisement.

This pooling of nonliquid assets was clearly for the benefit of the residuary legatees, because had they been reappraised or sold for the payment of the trust legacies, at that critical time in the depression the residuary estate would have been wiped out or severely reduced.

Now, after 17 years of liquidation, the trustee presents a supplemental schedule of distribution which starts with the original amount of the pooled assets $546,563.97, and shows a present balance of $462,-364.05, or a deficit of $84,199.92.

Exceptant, George W. T. Snare, one of the residuary legatees, contends that the trust legacies are only entitled to pro rata shares with the residuary legatees based on the stated amounts of their participations. He contends that the Pennsylvania Company was not a trustee of the pooled assets after the date of the schedule, that the parties were tenants in common, and that the jurisdiction of the orphans' court ceased as to exceptant's share.

It is undoubtedly the rule when assets are awarded in kind that the distributees become the owners and determine for themselves the method of liquidation. That, however, is not this case. Obviously, it was intended that the assets, the bulk of which were unappraised, should be retained by the trustee for further administration and liquidation. See Straus Estate, 68 D. & C. 61.

As has been stated, the ambiguity in the schedule of distribution is that it did not repeat the preference which had been established by the adjudication. A schedule of distribution is a final decree made in conformity with the findings and conclusions of an adjudication. If there is doubt in the schedule, it must be construed in harmony with the adjudication. Such should be the rule here, where the contentions made are highly technical. The purpose of the schedule was

to salvage some part of the estate for the residuary legatees, but not at the expense of the trust legacies.

The supplemental schedule of distribution properly awards the legacies in the amounts fixed by the will and adjudication, and the careful and well-written adjudication of the present auditing judge fully supports his approval of the supplemental schedule.

Exceptant also questions the construction of the will as to the disposition of the principal of a $25,000 trust legacy.

Item 3 (4) provides, upon the death of a grandchild, that the sum of $25,000 shall be paid:

". . . to such of his or her children or grand-children, being children of deceased children, who are then living at the time of the death of such grand-child, in such sums or proportions as he or she may by last will and testament direct and appoint; and in default of such direction or appointment, or if there be no such children or grand-children living at the time of the death of such grand-child, then the said sum to be distributed as part of my residuary estate."

Item 3 (7), which is the residuary clause, provides:

"Included in this distribution are all legacies of Twenty-five Thousand Dollars ($25,000) as heretofore given by me, the payment of which shall not have been made, by reason of the failure on the part of the persons entitled to exercise his, her or their powers of appointment, or by reason of there being no persons in being authorized to take under such power of appointment . . ."

John H. Gay, Jr., a grandson, died March 5, 1947, leaving two children, John H. Gay, 3rd, and Adelaide Gay Hawkins. He left a will but failed to exercise his power of appointment. Exceptant denies the rights of these children, and contends that the legacy falls into residuary estate.

Item 3 (4) of the will, in the first instance, created vested interests in the living descendants of a grandchild. The power of appointment in the grandchild was a limited power, and extended only to the fixing of the shares. They took their estates directly from the testatrix herself independently of the power: A. L. I. Restatement of the Law of Trusts §27, comment (c); Jones v. Mackie, 49 D. & C. 459 (488).

It is clear that the primary objects of testatrix's bounty were these descendants, and it is difficult to understand why they should lose their inheritance by the gift over merely because their parent did not state the proportions in which they should take. The important consideration was the existence of descendants, not the exercise of the power.

A vested estate will not be cut down by subsequent provisions in the will unless testator has expressed a clear and unambiguous intention to do so.

Viewed from the standpoint of common sense, testatrix must have considered the nonexistence of descendants and the consequent failure of the power as one event, and not two as the word "or" in the language of the gift over would seem to indicate.

As was said in Kelley v. Kelley, 182 Pa. 131: "No inapt words, nor any misuse of proper words, will be destructive of the plain intent, as ascertained from the whole will."

The gift over to the 15 residuary legatees is "in default of such direction or appointment, *or* if there be no such children or grandchildren living at the time of the death of such grand-child." (Italics supplied.)

There are many instances on the books where "or" has been construed "and" to avoid the disinherison of issue. For example, where there is a gift over if B dies under the age of 21 "or" without issue, both events must occur to support the gift over: Kelley v. Kelley, supra; Doebler's Appeal, 64 Pa. 9; Nicholson v. Brown,

238 Pa. 356; Mencher's Estate, 18 Pa. Superior Ct. 335.

If testatrix had intended the interests of these lineal descendants to depend solely upon the exercise of the power, she would have stopped there and no further language would have been necessary. The estate would have gone over to the residuary legatees. She went on, however, and by additional words predicated the gift over upon the nonexistence of descendants. This implies a gift to the descendants if living, and negatives any intention to benefit the residuary legatees in that event.

It should be noted that this exceptant alone of the 15 residuary legatees questions the right of these great-grandchildren to their parent's trust estate.

The exceptions are dismissed, and the supplemental schedule of distribution is confirmed absolutely.