# Philadelphia, Wilmington & Baltimore Railroad Company *versus* Conway et al.

1. Under the Act of April 26th, 1855, P. L., 309, an action brought to recover damages for an injury causing death should be brought by the widow without joining the minor children of the deceased; but when they are joined, and no objection is made to this in the court below, the Supreme Court will not reverse for this reason, after verdict and judgment.

2. That the attention of the court, on a motion for a new trial, was called to the fact that the defendant had accepted the provisions of the Act of April 4th, 1868. P. L., 58, limiting the liability of railroad companies to $5,000 in case of death caused by their negligence, it not having been offered in evidence on the trial, does not put it upon the record. In such case the Supreme Court will not pass upon the effect of Article III, Section 3 of the Constitution, on the acceptance of said Act by the defendant.

3. Pennsylvania R. R. Co. *v.* Langdon, 11 Norris, 21, commented on.

April 6th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of January Term, 1886.

This was an action on the case brought by Sophia Conway, the widow, and Mary Ellen, John Owen, and James Patrick Conway, minor children of Hugh Conway, deceased, against the Philadelphia, Wilmington and Baltimore Railroad Company, to recover damages for his death caused by the alleged negligence of the defendant.

Plea, not guilty.

No exceptions were taken by the defendant to any of the rulings, or the charge to the jury of the court below.

The jury rendered a verdict for $15,000, which the court *in banc* subsequently reduced to $10,000.

On a motion for a new trial the defendant presented to the court a certificate under the seal of the defendant company, signed by its secretary, showing that on the 22d day of April, 1868, said company duly accepted the provisions of the Act of April 4th, 1868, P. L., 58.

No proof of this fact had been made or offered on the trial.

The court, PEIRCE, J., overruled the motion for a new trial, filing the following opinion:

This is an action brought by the wife and children of Hugh Conway, to recover damages for his death caused by his having been run over by the cars of the defendant company, at Seventeenth street and Washington avenue.

The deceased was driving his milk cart down Seventeenth street, at a rate of speed about which there was much conflict of testimony. Some of the witnesses say that his speed was continued until the accident occurred. Others say that he slowed up as he approached the railroad, until he came almost to a stop. There is a gate at the north side of the railway on Seventeenth street, but it was not lowered. The gate-man was at it, and some of the witnesses say he was in the act of lowering it. It was about 15 feet from an upright position at the top when Conway came to the railway. One of the witnesses, a boy 14 years of age, who is since deceased, says that when the decedent came to the railway the gate-man beckoned to him to come on. His testimony was: "Mr. Conway was coming and he stopped slow. The man at the gate beckoned to him to come on. He drove across the railroad and the engine struck the wagon. When the man beckoned he came right on. He was coming towards home. The engine struck Mr. Conway's wagon just where the post is that the gate lays on." On cross-examination he said: "When the gate-keeper beckoned him Mr. Conway started at once. He went pretty fast when he started."

Other witnesses deny this, and say that the decedent came on rapidly, and without regard to the peril of approaching the railway. As he approached the track on which the coming train was, though it was moving slowly at the rate of four or five miles an hour, his horse veered to the right and passed ahead of the locomotive, but in doing so the wagon struck the post of the southernmost gate, and Conway was either thrown out or he jumped out and fell, and in endeavoring to recover himself his left leg was brought under the wheels of a car and crushed.

William L. Fernald, the gate-keeper, said: "It is not true that I beckoned this man to come on; I did not make any motion with my hand; I said nothing to the man to come on; I shouted and was pulling with both hands."

The police officer who took Mr. Conway to the hospital testified: "I spoke to him about it, and he made a statement to me as to the cause of the accident; I spoke to him about it whilst he was in the hospital; he told me that his horse got away and he could not manage him."

In commenting on this testimony to the jury, I left it to them to determine whether he meant that his horse got away before he approached the railroad, or that he got away at the time he struck the post, suggesting to them that it admits of either interpretation, and left it to them to say what he meant.

All the testimony was fully and fairly submitted to the jury, and they found for the plaintiffs in the sum of $15,000.

One fact was clear beyond all question. The gate shutting the railway off from travel was not down, and it has been held that where such a gateway is not closed, it is an invitation to the traveling public to come on, and an intimation to them that they may do so safely: Wanless v. Northeastern R. R. Co., 6 Q. B., 481; 7 Eng. and Irish Cases, App. 80.

It is clear that if the gateway had been closed the accident could not have occurred; or if by any possibility the horse and wagon could have got past it, the fault would not have been that of the company.

At the argument of the rule for a new trial it was suggested that the defendant was not liable in damages beyond the sum of $5,000, under the provisions of the Act of 4th April, 1868, and the decision in Langdon v. Railroad, 11 Norris, 21, the defendant company having accepted the provisions of that Act. But the late case of Lewis v. Holahan, 7 Out., 429, overrules Langdon v. Railroad. One of the points made in that case was that the Act of 4th April, 1868, in so far at least as it limits the amount of damages to be recovered, is avoided by the constitutional provision, article 3, section 21, prohibiting limitation of the amount of damages for injuries to persons or property, or injuries resulting in death. The Supreme Court, in passing on this point, says: "As to the second proposition, we are of opinion that it is correct. The purpose of the 21st section of the 3d article of the Constitution was to nullify, as far as possible, the then existing limitation limiting the amount to be recovered for injuries resulting in death, or for injuries to persons or property, . . . . . and at the same time prevent all such legislation in the future."

On a review of the whole case, we think the damages ought to be reduced, in view of the conflict of the testimony, and that the company had made provision for protection by its gate, though it was badly administered by its servant at the time of the accident.

On the plaintiffs entering a remittitur of $5,000 of the damages the rule for a new trial will be discharged; otherwise it will be made absolute.

The plaintiffs filed a remittitur of $5,000; judgment was thereupon entered for $10,000, whereupon the defendant took this writ and filed the following assignments of error:

2 AMERMAN—33

1. The judgment of the court below is void. Following the writ, narr, and verdict, it assumes that the Act of April 26th, 1855 (P. L., 309; Brightly, vol. 2, p. 1267, § 4), confers a joint cause and right of action upon and to the widow and children; whereas it confers a separate cause and right in the order designated in the statute.

2. The court below erred in entering a judgment in excess of $5,000; inasmuch as said defendant corporation had accepted the provisions of an Act approved April 4th, 1868, on the 22d day of April, 1868, in accordance with the following exemplification of the minutes of its board of directors, to wit:—(here was given at length the minutes adopting said Act).

*David W. Sellers (Gavin W. Hart* with him), for plaintiff in error.—1. The writ in this case is valid only on the assumption that a joint right of action accrued. The *narr* avers, "and the plaintiffs further say that the said Hugh Conway did not, in his lifetime, institute any legal proceedings for the recovery of damages for the injuries received by him as aforesaid, and that the said plaintiffs are the wife and minor children of the said Hugh Conway, and that for the reason as aforesaid, and by force and virtue of the Act of Assembly in such case made and provided, an action hath accrued to the said plaintiffs to have and demand of the defendant damages for the aforesaid negligent wounding of the said Hugh Conway, thereby causing his death."

When the plea of not guilty was filed, this material averment was put in issue.

It is true that in Borough of Easton *v.* Reinhart, Leg. Int., 1884, p. 337, it seems to be indicated that this court will not reverse alone for such an error. How exactly that case arose cannot be gathered from the report. But it would seem strange that a right of action founded only on statute can be prosecuted differently than the statute provides, and that if the defendant does not oblige the plaintiffs to amend rightly, it is to be punished for their neglect. The right of amendment is given to those who are in fault, and if such do not, at a proper time, ask the benefit of the right, they ought to be made to stand or fall on their record when presented for review, otherwise carelessness and care are made equal.

2. The second assignment of error raises the question whether a charter without legislation is repealed.

The defendant corporation is founded on the legislation of this State, and that of Delaware and Maryland. The legislation of this State was all passed by 1836. The effect of the acceptance of the Act of 1868 was declared by that statute

thus: "Upon the acceptance of the provisions of this Act by such carriers or corporations the same shall become a part of its act of incorporation."

Charters of private corporations are left exactly as the new constitution found them, and so they must remain until the companies holding them shall enter into a new contract with the State, by accepting the benefits of some future legislation : Hays v. Commonwealth, 1 Norris, 518; Langdon v. Penna. R. R. Co., 11 Id., 34.

The fact once being established that a limitation of liability is a part of the charter of a private corporation, the constitutional clause does not act, because it would impair the obligation of a contract; and because the constitution, in section 2 of the schedule, says it shall not act: Struthers v. City, 4 W. N. C., 378; Gunn v. Barry, 15 Wallace, 610. Nor does the present constitution of this State attempt to do this unlawful thing.

To avoid any question on this subject, we have section 2 of schedule, which provides that all rights, actions, prosecutions and contracts shall continue as if this constitution had not been adopted."

*Webster Dougherty (Daniel Dougherty* with him), for defendants in error.—1. The children of the decedent were joined with the widow as plaintiffs.

This has heretofore been the uniform practice in cases such as this, as may be seen by reference to Penna. R. R. Co. v. Henderson, 1 Smith, 315; Allan v. Willard, 7 Id., 374; Penna. R. R. Co. v. Weber, 1 W. N. C., 568; Scranton v. Dean, 2 Id., 467; Mansfield Coal & Coke Co. v. McEnery, 10 Norris, 185; West Phila. Pass. Rwy. Co. v. Mulhair, 6 W. N. C., 508; Schully v. Penna. R. R. Co., 6 Id., 69.

If the objection to the joinder of the children had been raised in the court below, the plaintiff would, of course, have asked and obtained leave to strike their names from the record. The waiver of plaintiff in error of the informality, by pleading and going to trial on the merits without objection, precludes it from setting it up here as a ground of reversal. There is no point better established in this State, from Prevost v. Nicholls, 4 Yeates, 479, to Payne v. Reese, 12 W. N. C., 97, that an error by which the plaintiff in error could not have been injured is no ground for reversal. See also Huntington and Broad Top R. R. Co. v. McGovern, 29 Pa. St., 78; Bailey v. Shohecker, 2 W. N. C., 57; Fritz v. Heyl, 93 Pa. St., 79; Runk v. Runk, 5 Barr, 215; Bryer et al. v. Patterson et al., 2 W. N. C., 649.

That this court will not reverse for any such error as is as-

signed under the first specification, is under the above authorities too well established to be seriously disputed. If those already submitted are not sufficient, reference may be had to the case of Borough of Easton *v.* Reinhart, 13 W. N. C., 389, a case precisely similar to this in all the material features.

There was not a particle of evidence offered in the court below to show that the company had accepted the provisions of the Act of April 4th, 1868.

It is true, in the paper book is recited at length a paper that purports to be a copy of the acceptance by the plaintiff in error of the provisions of the Act of 1868.

But no such paper or copy of it was offered at the trial.

∴ Even if it had been offered in evidence in the court below it could not be used here, there having been no bill of exceptions taken : Wilson *v.* Horner, 9 Smith, 160 ; Hamilton *v.* Moore, 4 W. & S., 570 ; Wheeler *v.* Werin, 3 P. F. S., 127.

Besides, even if the point were well taken, it would be manifestly unfair to the lower court to permit a question to be raised here which was not made at the trial.

See on this point: Dorman *v.* Turnpike Co., 3 Watts, 126 ; Pitt Township *v.* Leech, 12 Pa. St., 33 ; Royden & Watson *v.* Knight, 2 W. N. C., 713 ; Uplinger *v.* Bryan, 12 Pa. St., 219 ; Wright *v.* Wood, 23 Pa. St., 120 ; Dawson *v.* Robinson, 3 W. N. C., 49.

It is well settled by a long line of decisions that the granting or refusal of a new trial is a matter entirely in the discretion of the court below, and consequently that an opinion filed by the court in discharging a rule is no part of the record. This was held in Cathcart *v.* Commonwealth, 1 Wright, 109. To the same effect also are: Burd *v.* Darsdule, 2 Binn., 80 ; Wright *v.* Smull, Id., 93 ; Weikheiser *v.* Weikheiser, 6 W. & S., 184 ; Werse *v.* Levis, 13 Pa. St., 384 ; Lancaster *v.* De Normandie, 1 Wharton, 49 ; Koon *v.* Steel, 19 Pa. St., 203 ; Lehigh Railroad Co. *v.* Hall, 61 Pa. St., 361 ; Bartolett *v.* Dixon, 73 Id., 129 ; Alexander *v.* Widener, 82 Pa. St., 452 ; Laubach *v.* Riehle, 33 Leg. Int., 281.

. But the question as to the acceptance or non-acceptance of the Act of 1868 by plaintiff in error, becomes of very little consequence, in view of the decision of this court in the late case of Lewis *v.* Hollohan, reported in 7 Out., 425.

' Mr. Justice PAXSON delivered the opinion of the court May 3d, 1886.

The plaintiff in error complains in his first specification of the joinder of the minor children with their mother as plaintiffs in the action. No objection was made in the court below ; the defendant went to trial upon the issue as there made up.

The objection is purely technical. It did not affect the trial below nor its results. This point was ruled in the case of the Borough of Easton v. Reinhart, 13 W. N. C, 389, and need not be further discussed.

The second specification of error was that "the court below erred in entering a judgment in excess of $5,000, inasmuch as said defendant corporation has accepted the provisions of an Act approved April 4th, 1868," &c.

This was intended to raise an interesting question, viz., whether a charter is repealed by the new constitution without legislation providing for such repeal. This is a new question, excepting in so far as it was considered in Hays v. Com., 82 Penn. St. Rep., 518, and Langdon v. Penn. Railroad Company, 92 Id., 21. We decline to discuss it now, however, for the reason that the question is not properly upon the record. It was not proved upon the trial below that the defendant company had accepted the provisions of. the Act of 1868. It is true the paper book contains a copy of what purports to be resolutions of the company accepting said Act, but the resolutions were not put in evidence and no such point was made upon the trial. That it was brought to the attention of the court upon the argument for a new trial does not help the matter, and even this does not appear properly, as the opinion of the court upon that motion is no part of the record.

It may not be out of place just here to correct a misapprehension of the learned judge below in regard to Railroad Co. v. Langdon, *supra.* That case has not been overruled as he supposes. Some of the reasoning by which it was supported is not sustained by the late case of Lewis v. Hollohan, 103 Penn. St. Rep., 425, and as my brethren are wiser than myself I cheerfully submit to their views. Moreover, if when the main question comes up again, Railroad Company v. Langdon shall be found to be a mistake, it will afford me pleasure to join in overruling it. But the question has not been here since, until the attempt to raise it in the present case. It is therefore premature to assume that Railroad Company v. Langdon has been overruled. This court has not yet said that the new constitution *ipso facto* repealed charters.

Judgment affirmed.