# Jackson *v.* Gunton, Appellant.

*Practice, C. P.—Amendment—Statement—Trespass—Treble damages.*

The cause of action is the particular matter for which a suit is brought, and when the object of an amendment is not to forsake this, but to adhere to it and effect a recovery upon it, it is the duty of the court when the merits of the case cannot otherwise be reached; to permit the amendment. This rule is not restricted to actions ex contractu. It applies also to actions ex delicto.

Where in an action of trespass the statement shows that the cause of action was breaking the plaintiff's close and mining and removing therefrom coal, and concludes with an averment that this was done contrary to the acts of assembly in such case made and provided, and the damages claimed are three times the value of the coal removed, an amendment to the statement is properly allowed which sets forth (1) that the damages claimed were treble damages under the Act of May 8, 1876, P. L. 142, and (2) that the plaintiffs were further damaged in an amount stated by the negligence of the defendants in mining the coal so as to injure and render less valuable the vein or veins of coal from which he mined.

It seems that treble damages for wrongfully mining coal and single damages for an injury to the mine caused by negligence in mining the coal illegally removed and converted may be joined in one action.

*Deeds—Evidence—Recitals of pedigree.*

As a general rule a deed is not admissible in evidence unless some title or spark of title is shown in the grantor, and a recital of fact in a deed is not evidence against a stranger ; but these general rules are not always strictly adhered to where recitals of pedigree in ancient deeds are concerned.

In an action of trespass it appeared that the patentee of the land had executed a declaration of trust to the effect that he held the title for three persons named. There was offered in evidence a deed which recited that the grantor therein was the oldest son and heir at law of the declarant in the declaration of trust. The deed was in trust for the use of the persons named as cestuis que trust in the declaration of trust. This deed was made eighty-seven years and recorded more than fifty years before the date of the trial, and so far as the evidence showed none of these parties or their privies claimed title otherwise than through that declaration of trust and the deed in question. *Held* that the deed was properly admitted in evidence, and especially so as against a trespasser without color of title to the land.

*Trespass—Wrongdoer without title—Outstanding title.*

A wrongdoer without title who endeavors to protect his trespass by the outstanding title of a stranger has no equity, and is not entitled to any particular favor.

*Deed—Evidence—Relevancy.*

A deed cannot be rejected as irrelevant and immaterial " for reasons that

will hereafter appear in the trial of the case," where it is relevant and competent at the time it is offered.

*Tax sales—Unseated land—Burden of proof—Evidence.*

A sale of land for taxes under section 41 of the Act of April 29, 1844, P. L. 486, as seated, which in fact was unseated at the time of the assessment, is void and will pass no title to the purchaser ; but the burden of proving that the land was unseated at the time of the assessment rests on the person asserting it. In such a case evidence of the unimproved condition of the land in a certain year, is not sufficient to sustain a finding that there was neither residence upon nor cultivation of the land twenty-five years earlier.

*Deed—Will—Conversion—Reconversion—Evidence—Trespass.*

In an action of trespass it appeared that a former owner of the land had so devised the land to his executors as to work a conversion. Three of the five beneficiaries under the will and the widow executed a deed of trust to another of the beneficiaries in which it was recited that the trustee and the remaining beneficiary had conveyed their shares to the widow. As a matter of fact there was no proof that the remaining beneficiary had conveyed his share to the widow. The parties in the action of trespass were the trustee under the deed of trust, and the administrator d. b. n. c. t. a. of the former owner. *Held,* that if there was technical error in admitting in evidence the deed of trust, and in joining the trustees with the administrator d. b. n. c. t. a., the error was in no way prejudicial to the defendant.

*Deeds—Acknowledgment—Sheriff's deed.*

The acknowledgment of a sheriff's deed is a judicial act, and concludes all mere irregularities, however gross, in the process and sale. After acknowledgment the validity of the title acquired by the purchaser cannot be questioned in a collateral action involving the title, except for the absence of authority, or the presence of fraud in the sale.

A sheriff's deed made to a firm of which the purchaser at the sale was a member, and duly acknowledged cannot be overthrown by the fact that the return of the sheriff showed a sale to the purchaser as the highest and best bidder. In such a case the sheriff's deed as acknowledged is prima facie evidence of the payment of the purchase money, and of a valid title to the land in the grantees therein named, and this is especially so where it appears that the purchaser was the plaintiff in the writ, and that the deed was in the possession of his representatives.

*Mines and mining—Trespass—Unlawful mining of coal—Statement of claim.*

Where in an action to recover treble damages for the unlawful mining of coal on another's land the statement relates exclusively to the mining of coal on plaintiff's land and the injury to plaintiff's mine, no evidence is admissible to show that the defendants violated the third article of the Act of June 2, 1891, P. L. 176, relative to barrier pillars between adjoining coal companies, in mining the coal upon their own land.

Argued March 9, 1904. Appeal, No. 16, Feb. T., 1904, by defendant, from judgment of C. P. Sullivan Co., Sept. T.,

1901, No. 51, on verdict for plaintiff in case of W. W. Jackson and Blanch W. Sturdevant, Trustees, for the Devisees of George D. Jackson, Administrator d. b. n. c. t. a. of George D. Jackson, Deceased, v. Walter B. Gunton.   Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ.   Reversed.

Trespass to recover damages for the unlawful mining of coal on the plaintiff's land.

Verdict and judgment for plaintiff for $1,404.   Defendant appealed.

*Errors assigned* sufficiently appear by the opinion of the Superior Court.

*Rodney A. Mercur*, with him *Rush J. Thomson* and *Albert F. Heess*, for appellant.— The amendment was improperly allowed : Bank v. Israel, 6 S. & R. 293 ; Newlin v. Palmer, 11 S. & R. 98 ; Diehl v. McGlue, 2 Rawle, 337 ; Root v. O'Neil, 24 Pa. 326 ; Wood v. Anderson, 25 Pa. 407 ; McNair v. Compton, 35 Pa. 23 ; Gardner v. Post, 43 Pa. 19 ; Smith v. Smith, 45 Pa. 403 ; Trego v. Lewis, 58 Pa. 463 ; Wilhelm's App., 79 Pa. 120 ; Royse v. May, 93 Pa. 454 ; Tyrrill v. Lamb, 96 Pa. 464 ; Duffey v. Houtz, 105 Pa. 96 ; Fairchild v. Dunbar Furnace Co., 128 Pa. 485 ; Grier v. Northern Assurance Co., 183 Pa. 334 ; Wright v. Eureka Tempered Copper Co., 206 Pa. 274; Todd v. Ins. Co., 9 Pa. Superior Ct. 381 ; Phila. v. Pass. Ry. Co., 11 Pa. Dist. Rep. 33.

A deed cannot be given in evidence until some interest is shown to have existed in the grantor : Schrack v. Zubler, 34 Pa. 38 ; Bonaffon v. Peters, 134 Pa. 180.

A recital in a deed is not evidence, except against a party claiming under it : Morris v. Vanderen, 1 Dallas, 64 ; Galbraith v. Green, 13 S. & R. 85 ; Dean v. Connelly, 6 Pa. 239 ; Lloyd v. Lynch, 28 Pa. 419 ; Jack v. Woods, 29 Pa. 375.

It is true that where the whole beneficial interest in the land or money directed to be converted belongs to the person for whose use it is given, equity will permit him to elect to take in land or money, as the subject happens to be at the moment. But the right of election must be actually and unequivocally

exercised, and the onus of showing the act of election lies on the party alleging it. So where there are several interested in the subject-matter, all must agree to elect: Miller v. Meetch, 8 Pa. 417; Beatty v. Byers, 18 Pa. 105; Styer's Appeal, 2 Grant, 453; Evans's Appeal, 63 Pa. 183; Gumaer v. Barber, 182 Pa. 31; Howell v. Mellon, 189 Pa. 169; Rauch's Estate, 21 Pa. Superior Ct. 60.

The acknowledgment of a sheriff's deed is a judicial act, and concludes all mere irregularities, however gross, in the process and sale. After the acknowledgment the validity of the title acquired by the purchaser cannot be questioned in any collateral action involving the title, except for absence of authority or the presence of fraud in the sale: Shields v. Miltenberger, 14 Pa. 76; McFee v. Harris, 25 Pa. 102; Simons v. Kern, 92 Pa. 455; Cock v. Thornton, 108 Pa. 637; Levan v. Millholland, 114 Pa. 49; Media Title & Trust Co. v. Kelly, 185 Pa. 131; Mencke v. Rosenberg, 202 Pa. 131; Milleisen v. Senseman, 4 Pa. Superior Ct. 455; Critchlow v. Critchlow, 35 Pitts. Leg. Jour. 306.

The nonreturn of the execution, upon which the sheriff makes a sale, will not effect the validity of his conveyance. His deed may be considered a return, and a misrecital in the deed of the vend. ex. is open to correction: Hinds v. Scott, 11 Pa. 19; Gibson v. Winslow, 38 Pa. 49; Kelly v. Creen, 53 Pa. 302.

The tract being unseated and sold as seated to George D. Jackson was void for want of jurisdiction, and conveyed no title under all our authorities like Hathaway v. Elsbree, 54 Pa. 498, Preswick v. McGrew, 107 Pa. 43, and Holloway v. Jones, 143 Pa. 564.

*Seth T. McCormick,* with him *E. J. Mullen* and *Alphonsus Walsh,* for appellees.—A wrongdoer, without title, who endeavors to protect his trespass by the outstanding title of a stranger has no equity, and is not entitled to any particular favor: Halsey v. Blood, 29 Pa. 319.

Defective declarations may be amended at any time: Root v. O'Neil, 24 Pa. 326; Com. v. Yeisley, 6 Pa. Superior Ct. 237; Erie City Iron Works v. Barber, 118 Pa. 6; Knapp v. Hartung, 73 Pa. 290; Schnable v. Koehler, 28 Pa. 181; Good

Intent Co. v. Hartzell, 22 Pa. 277 ; Schoneman v. Fegley, 7 Pa. 433 ; Thompson v. Chambers, 13 Pa. Superior Ct. 213 ; Ins. Co. v. Spang, 5 Pa. 113 ; Fredericks v. Penna. Canal Co., 148 Pa. 317.

Samuel M. Fox, trustee, having died intestate, the trust estate vested in him descended to the heir at common law, to wit: the oldest son : Jenks v. Backhouse, 1 Binney, 91 ; Carlisle & Means's App., 9 Watts, 331.

So that no other person could have made the deed complained of except Joseph M. Fox, the grantor, and the fact that Joseph M. Fox was the oldest son is proven after the lapse of time since 1816 by the instrument itself : Zeigler v. Houtz, 1 W. & S. 533 ; Fulkerson v. Holmes, 117 U. S. 389 (6 Sup. Ct. Repr. 780) ; Reynolds v. Longengerger, 57 Pa. 13 ; Bowser v. Cravener, 56 Pa. 132 ; Zeigler v. Hautz, 8 Watts, 380.

That the sheriff's return is conclusive we cite the following cases : Benwood Iron Works v. Hutchinson, 101 Pa. 359 ; Levan v. Millholland, 114 Pa. 49; Bennethum v. Bowers, 133 Pa. 332 ; MacGeorge v. Mfg. Co., 141 Pa. 575 ; Deacle v. Deacle, 160 Pa. 206 ; Weyand v. Tipton, 5 S. & R. 332; Garner's App., 1 Walk. 438 ; Brechtel v. Cortright, 13 Pa. Superior Ct. 384 ; Gibson v. Winslow, 38 Pa. 49 ; Stewart v. Freeman, 22 Pa. 120 ; Slater's App., 28 Pa. 169 ; Small v. Hodgen, 1 Litt. (Ky.) 16.

An error which does the appellant no harm is not ground for reversal : Malone & Son v. Railroad Co., 157 Pa. 430 ; Jaffray & Co. v. Frothingham, 148 Pa. 213 ; Trego v. Pierce, 119 Pa. 139 ; Commercial National Bank v. Henninger, 105 Pa. 496.


OPINION BY RICE, P. J., October 17, 1904 :

In their first statement the plaintiffs declared that the defendant broke and entered their close, " that is to say, a certain coal mine or vein of coal," described by metes and bounds, and mined and removed therefrom 3,500 tons of coal of the value of $1,750, and converted the same to his use, without the consent of the owners, the defendant then and there well knowing that the close and the coal therein were not his property, but that the coal was the exclusive property of the plaintiffs. The statement concluded as follows : " And other wrongs to the said plaintiffs then and there did, contrary to the form

of the acts of assembly in such cases made and provided, etc.,
. . . . to the damage of the said plaintiffs in the sum of $5,250,
therefore they bring this suit."

After the cause had been arbitrated and an award made in
the plaintiffs' favor, from which the defendant had appealed,
the plaintiffs by leave of court filed an amended statement of
claim, and still later a second amended statement. As to the
coal mined, removed and converted the latter statement con-
cluded as follows : " And the plaintiffs aver that this was done
contrary to the act of assembly approved May 8, 1876, P. L. 142,
and that therefore it is to the damage of the plaintiffs treble
the value of the coal so dug, mined and converted to the use
of the said defendant, to wit : the sum of five thousand two
hundred and fifty dollars." The other averments of this state-
ment, so far as they concern the locus in quo, the quantity and
value of the coal mined, removed and converted, and the essen-
tials to a recovery of treble damages under the act of 1876, do
not differ substantially from those of the first statement, and
they plainly relate to the same trespass. Nor was the cause
of action charged by the above quoted clause in the second
amended statement relative to treble damages ; the purpose
and effect of this change in the mode of stating the cause of
action were simply to make clear what was manifestly in-
tended, but, perhaps, was defectively stated, in the first state-
ment, namely, that the plaintiffs claimed to recover, by virtue
of the provisions of the act of 1876, three times the value
of the coal mined, removed and converted to his use by the
defendant. The case of Fairchild v. Dunbar Furnace Co., 128 .
Pa. 485, upon which the appellant's counsel confidently rely,
is plainly distinguishable from the case at bar upon two grounds :
First, because the original declaration was for a trespass at
common law, and that alone, and contained no claim, direct or
inferential, of damages under the statute ; secondly, because
the amendment, whereby a right to recover treble damages un-
der the statute was asserted, was not made within six years
from the date when the right accrued.

But in the second amended statement there is an additional
allegation that the defendant " did so mine the coal taken out
as aforesaid as to injure and render less valuable the vein or
veins of coal from which he mined, and to cause the plaintiffs

to lose great quantities of coal, thus causing the said plaintiffs great damage, to wit: the sum of six thousand dollars." The cause of action is the particular matter for which the suit is brought, and when the object of an amendment is not to forsake this, but to adhere to it and effect a recovery upon it, it is the duty of the court, when the merits of the case cannot otherwise be reached, to permit the amendment: Erie City Iron-Works v. Barber, 118 Pa. 6. This rule is not restricted to actions ex contractu. In actions ex delicto the rule is the same; the foundation of the complaint laid in the declaration must be adhered to, although the mode of stating that complaint, or of setting out the circumstances and consequences of the injury, may be varied by amendment: Knapp v. Hartung, 73 Pa. 290. Here the cause of action was breaking the plaintiffs' close and mining and removing therefrom coal. The amendment under consideration did not introduce a new cause of action. The trespass complained of was the same as that charged in the first statement; the amendment simply pointed out that the injury to the close was aggravated by the manner in which the mining was done. We therefore think that it was permissible under the rule above stated. See Fredericks v. Penna. Canal Co., 148 Pa. 317; Knabb v. Kaufman, 1 Woodward's Decisions, 319; Adam v. Moll, 6 Pa. Superior Ct. 380.

As to the suggestion that a claim to recover three times the value of the coal removed and converted to the defendant's use, and a claim to recover single damages for the injury to the mine caused by negligence in mining the coal so removed and converted, cannot be joined in one action, even though both grew out of the same trespass, we refer to Welsh v. Anthony, 16 Pa. 254, and Fairchild v. Dunbar Furnace Co., supra, where as we read the opinions, a contrary doctrine was held. True it was said in the latter case that " whilst, perhaps, they may be joined in one action, there can be but one recovery." But we are not now discussing the measure of damages applicable to the case under the evidence adduced on the trial. All that we decide in overruling the first three assignments is that no error was committed in permitting the second amended statement to be filed or in overruling the demurrer thereto.

In support of their allegation of ownership the plaintiffs of-

fered in evidence a paper title, beginning with a warrant survey and patent in 1793, and including a deed to Michael Meylert dated September 6, 1849, for an undivided fourth of the larger tract of which the lot in question is a part, and a deed dated June 30, 1858, from Thomas W. Clymer to the same grantee for the other three fourths. So far as the intermediate conveyances are concerned no specific objection is raised by the assignments of error, except as to the deed from Joseph M. Fox to Joseph P. Norris and Hugh Roberts, dated April 6, 1816, and quite fully described in the fifth assignment of error. It is to be noticed that the deed was made in trust for the use of George Fox, Joseph Parker Norris and the devisees under the will of George Roberts deceased (these being the owners of three undivided fourth parts of the land for whose use Samuel M. Fox held the title thereto as acknowledged by him in a declaration of trust executed in 1798), and that the deed purports to have been made " in order the more easy to carry into effect the objects of said trust." It was admissible in evidence under the doctrine of Lessee of Jenks v. Backhouse, 1 Binney, 91, if, as recited in the deed, Joseph M. Fox, the grantor, was " the eldest son and heir at law of him and said Samuel M. Fox deceased," the patentee of the tract, and the declarant in the declaration of trust above referred to. The general rule is, that a deed is not admissible in evidence unless some title or spark of title is shown in the grantor, also, that a recital of a fact in a deed is not evidence against a stranger, as the cases cited by the appellant's counsel abundantly show. But there are cases which show that these general rules are not always to be strictly adhered to where recitals of pedigree in ancient deeds are concerned : Paxton v. Price, 1 Yeates, 500 ; Bowser v. Cravener, 56 Pa. 132; Scharff v. Keener, 64 Pa. 376 ; Carter v. Tinicum Fishing Co., 77 Pa. 310. The question is quite fully discussed in Fulkerson v. Homes, 117 U. S. 389 (6 Sup. Ct. Repr. 780). See also Garwood v. Dennis, 4 Binney, 314 ; James v. Letzler, 8 W. & S. 192, and Dorff v. Schmunk, 197 Pa. 298, which relate particularly to recitals of other deeds. The deed in question was made eighty-seven years, and recorded more than fifty years, before the date of the trial; it was made for the use and benefit of the parties beneficially interested under the declaration of trust executed by Samuel M. Fox, and one of

them was not only a direct party to it, but also one of the executors under the will of Samuel M. Fox, already in evidence; so far as appears, none of these parties or their privies has asserted title otherwise than through that declaration of trust and the deed in question, which, as we have seen, was made to carry it into effect; on the contrary, it was recognized in the subsequent conveyances of their interests; and, finally, the defendant is a trespasser without even color of title to the portion of land covered by the deed upon which the trespass was committed. "A wrongdoer without title, who endeavors to protect his trespass by the outstanding title of a stranger, has no equity, and is not entitled to any particular favor:" Halsey v. Blood, 29 Pa. 319. In view of all the circumstances to which we have alluded we are not prepared to say that there was reversible error in admitting the deed in evidence; it was certainly admissible so far as it concerned the interest of Joseph Parker Norris, or was rendered so by subsequent evidence, and for this reason alone, if for no other, the fifth assignment of error should be overruled.

In December, 1855, Michael Meylert and Thos. W. Clymer, who then held the paper title to which we have referred, contracted in writing to sell the lot in question to James Gallagher; in 1858, Clymer conveyed his interest in the land to Meylert, and in 1866, Meylert deeded the land to George D. Jackson, the devisor, under whose will the plaintiffs claimed title at the time of the trespass. The defendant objected to the admission of the Meylert deed as irrelevant, immaterial and incompetent "for reasons that will hereafter appear in the trial of the case." This was not a valid objection. The evidence being relevant and competent at the time it was offered no error was committed in admitting it. Therefore the seventh assignment is overruled.

In 1858 the lot was assessed as seated land in the name of James Gallagher and so returned and sold for the unpaid taxes of 1858 to George D. Jackson on June 11, 1860. It was held in Hathaway v. Elsbree, 54 Pa. 498, Preswick v. McGrew, 107 Pa. 43, and Hollaway v. Jones, 143 Pa. 564, that a sale of land for taxes under the forty-first section of the act of April 29, 1844, P. L. 486, as seated, which in fact was unseated at the time of the assessment, is void and will pass no title to the purchaser.

But the burden of proving that the lot in question was unseated at the time of the assessment rested on the defendant, and this too, notwithstanding the allegation of the plaintiffs' first statement that at the time of the trespass, which was at least forty years after, the land was " unimproved." The only oral testimony bearing upon the question was that of a witness who had known the tract for about twenty years before the date of the trial, which took place in 1903. He testified that there was no residence upon or cultivation of the lot during that period and that the timber appeared to be original, not second growth ; but he did not state whether the whole lot was timbered, nor to what extent it was timbered, and he admitted that he did not specially examine the quality of the timber. This evidence as to the condition of the land in 1883 and thereafter was clearly insufficient to sustain a finding that there was neither residence upon nor cultivation of the land in 1858. Nor was that fact established by the sheriff's description of it as " unimproved " in a levy made in May, 1860 ; therefore we need not take up time in discussing the question whether the title acquired by a purchaser at tax sale can be affected by the description which a sheriff gives to the land in an entirely independent proceeding. The seventeenth and eighteenth assignments are overruled.

George D. Jackson died in 1879, testate. It is conceded by both parties that the devise of his real estate to his executors with directions to sell worked a conversion. For the purpose of showing that there was a reconversion, and therefore that the trustees of the parties beneficially interested under the will had a right to sue, the plaintiffs offered in evidence the deed executed in 1899 which is recited in the sixth assignment of error. Three of the five legatees, and Bernice W. Jackson, the widow and surviving executrix under the will—it being recited that George C. Jackson and Willie W. Jackson, the two other legatees, had conveyed their shares to her—were grantors in the deed, and Willie W. Jackson was one of the grantees to whom the deed was made in trust for the parties beneficially interested in the real estate under the will. The declared reason for making the deed was because these persons were " desirous of retaining unto themselves, their heirs and assigns, the remaining real estate of said decedent uncon-

verted and holding the same as tenants in common." This election to enjoy the land in its actual state was clear and unequivocal, and, as Willie W. Jackson accepted the trust and is one of the plaintiffs in this action asserting the validity of the deed, no other proof of the fact recited in it, namely, that he had previously conveyed his share to Bernice W. Jackson, was needed. So far, therefore, as the intent of the owners of four of the five shares is concerned there is no room for doubt. But as a general rule a reconversion cannot take place unless all the parties in interest unite to elect: Willing v. Peters, 7 Pa. 287; Miller v. Meetch, 8 Pa. 417; Beatty v. Byers, 18 Pa. 105; Evans's Appeal, 63 Pa. 183; Howell v. Mellon, 189 Pa. 169; Rauch's Est., 21 Pa. Superior Ct. 60. It is argued that as George C. Jackson, one of the five beneficiaries, was dead at the date of the deed, and as neither his heirs nor his personal representatives were parties to it, and as there was no proof outside the recital itself, of the fact recited, namely, that he had conveyed his share to Bernice W. Jackson, the foregoing rule is applicable, and therefore the deed did not establish the right of the surviving trustees named therein to sue, and should have been rejected. Whether the omission to prove the conveyance of the share of George C. Jackson was due to the assumption of counsel that the recital was prima facie evidence of the fact as against a mere trespasser, or to their inability to prove such conveyance otherwise or to the fact that the specific objection now under consideration was not made in the court below, we cannot say; but as the evidence stands the objection to the deed as evidence of a reconversion, and of the right of the trustees to sue, seems to be well taken. But granting this, we fail to see how the defendant was harmed. Assuming, as both parties do, that the will effected a conversion, and, as the defendant does, that the deed, under the evidence, was inoperative, the technical error, if any, in joining the trustees with the administrator d. b. n. c. t. a. as plaintiff was not prejudicial to the defendant in any way that we can discover, and, therefore, would not necessarily require a reversal of the judgment: Phila., Wilm. & Balt. R. R. Co. v. Conway, 112 Pa. 511; McIntire v. Westmoreland Coal Co., 118 Pa. 108; Kelley v. Kelley, 182 Pa. 131; Fritz v. Heyl, 93 Pa. 77; Thornton v. Britton, 144 Pa. 126. At any rate the

objection does not go to the real merits of the case, and may be obviated on the next trial by putting in evidence the conveyance from George C. Jackson or by amendment of the parties to the action.

In April, 1860, by virtue of a confession contained in the Gallagher contract above referred to George D. Jackson, the assignor of the vendors, entered judgment against Gallagher for the balance of purchase money, and on the same day issued execution. The sheriff returned that he levied upon the land and sold the same "to George D. Jackson, for seventy dollars, he being the highest and best bidder." It also appears that Jackson paid the costs, and gave a receipt on May 29th, for the balance of his bid to apply on the judgment. The defendant having put the record of these proceedings in evidence then offered a deed from the sheriff to J. Jackson & Sons dated, and acknowledged in open court in September, 1860, in which, after describing the lot by metes and bounds precisely as it was described in the return to the writ, it was further stated that it was "the same lot of land and premises sold by the said sheriff on May 29, 1860, as the property of James Gallagher, by virtue of a certain writ of fieri facias bearing test," etc. Here follows a precise description of the writ above referred to. In view of the recitals there is no room for reasonable doubt that, in the intent of the sheriff and the court, the deed was executed, acknowledged and delived in consummation of the sale upon that writ. It is to be noticed further that the deed was produced on the trial by the plaintiffs pursuant to notice and subpœna. In connection therewith and the record of its acknowledgment, the defendant offered to show that at the time of the purchase George D. Jackson was a member of the firm of J. Jackson & Sons. These offers were rejected upon the ground that in view of the return the sheriff had no authority to make the deed to them. The learned judge said: "I do not know of any authority for the execution of a deed by the sheriff except what is contained in the return of sale." In rejecting the deed upon this ground we think he fell into error. "In numerous cases it has been held by this court that the acknowledgment of a deed is a judicial act, and concludes all mere irregularities, however gross, in the process and sale. After acknowledgment, the validity of the title acquired by

the purchaser cannot be questioned in a collateral action involving the title, except for the absence of authority or the presence of fraud in the sale : " Cock v. Thornton, 108 Pa. 637. This statement of the rule was quoted with approval in the recent case of Mencke v. Rosenberg, 202 Pa. 131. It is " founded upon the conceded right of all parties having an interest in the question to appear and dispute the propriety or regularity of the official sale ; " hence, said Justice BELL, " mere irregularities, whether of omission or commission, which do not render the officer powerless, or taint the transaction with turpitude, may be cured by the tacit acquiescence of those who ought to speak in time : " Shields v. Miltenberger, 14 Pa. 76. The importance of the fact that the parties interested, plaintiff, defendant and purchaser may be heard upon exceptions was pointed out in Vastine v. Fury, 2 S. & R. 426, where Justice YEATES said : " Upon exceptions taken to a sheriff's sale, on the sheriff's offering to acknowledge the deed, the court will hear everything that can be urged against the regularity of the proceedings, and the conduct of the sheriff, the plaintiff in the suit, and the purchaser ; and receive or refuse the acknowledgment of the deed according to the proofs made before them. This is the proper period for persons interested in the sale to take advantage of mere irregularities." See also the opinion of Justice SERGEANT in Hoffman v. Coster, 2 Whart. 453, relative to the judicial character of the proceedings. This doctrine has been carried to the extent of holding that the nonreturn of the vend. ex. upon which the sheriff makes a sale will not affect the validity of the conveyance : Hinds v. Scott, 11 Pa. 19 ; Gibson v. Winslow, 38 Pa. 49 ; Kelly v. Crew, 53 Pa. 302 at p. 305 ; Smull v. Mickley, 1 Rawle, 95 ; Cock v. Thornton, supra ; Boyer v. Webber, 22 Pa. Superior Ct. 35. So that it is not an invariable rule that there is no authority for the execution of a deed by the sheriff except what is contained in the return to the writ upon which the sale was made. Upon the facts of the cases above cited it was held that for all purposes of information to the court the sheriff's deed was a return. Nor is every unexplained discrepancy between the return and the deed fatal. In Vastine v. Fury, supra, a sheriff's deed was held to be valid, notwithstanding that the return remained unaltered upon the record, setting forth that the

purchaser had not paid the money, and therefore the land remained unsold. The sheriff's deed duly acknowledged, reciting the sale and the receipt of the money, was deemed a sufficient amendment of the return. It is true that the sheriff had been directed to amend his return ; but this was held to be no more than granting him leave to do so, because the court had no power to compel him to alter his return in a matter of fact, and he had not, in fact, altered it except by the act of executing the deed to the purchaser. In Foster v. Gray, 22 Pa. 9, the return was "sold to James Gray for $1,001 " to which was added, " Gray refusing to pay, therefore unsold for want of bidders." Upon error it was held, affirming the court below, that the sheriff's deed to Gray, subsequently acknowledged, was admissible in evidence in an action of ejectment brought against Gray. LEWIS, J., who delivered the opinion of the court, said : " The act of the court in the case now before us, by which the acknowledgment of the deed was received and entered of record, and certified, was certainly equal to granting the sheriff permission to amend his return ; and the deed thus acknowledged with the sanction of the court, was as effective in amending the previous return, as that which was held to produce the same effect in Vastine v. Fury. The entry of the acknowledgment is presumed to have been made upon due notice to the parties interested, and the action of the court has all the effect of a judicial decree. The sheriff's deed, thus acknowledged, was therefore prima facie evidence of the payment of the purchase money and of a valid title to the land." These decisions have not been questioned, so far as this point is concerned, in any subsequent case that has been called to our attention or that we have been able to find. In the case before us, assuming that the defendant can make good his offer, George D. Jackson, the person returned as the successful bidder at the sale, was one of the grantees in the deed subsequently acknowledged by the sheriff ; he was also the plaintiff in the writ, and the deed was produced on the trial by those representing his interest. In the absence of explanatory or contradictory evidence these facts furnish ground for reasonable inference, to say the least, that he had notice of the action of the court and the sheriff and acquiesced in it ; we therefore conclude, both upon principle and authority, that the offers should have been received.

Whether the result would be the same if the deed had been made to an entire stranger to the proceeding is a question we are not required to consider, and we express no opinion upon it. The eighth assignment is sustained.

In the instructions complained of in the tenth assignment, after quoting the tenth section of the third article of the Act of June 2, 1891, P. L. 176, relative to barrier pillars between adjoining coal properties, and the eighth section of article seventeen of the same act, relative to the right of action " for any injury to person or property occasioned by any violation of this act or any failure to comply with its provisions," and after stating that the plaintiffs claimed to recover under this section for a violation of the provisions of the tenth section, the learned judge more specifically defined the claim as follows : " Now it is claimed on the part of the plaintiffs that in mining this coal from the Gunton lands, or the lands adjoining those of the plaintiffs, that the defendant did not regard the provisions of the act of assembly and did not leave a pillar of coal or barrier wall upon the Gunton side of this line sufficient to protect the men in the adjoining property, or the mine of the plaintiffs in case of its being opened and worked." The eleventh, thirteenth and fourteenth assignments allege error in the instructions relative to the measure of damages in the event of a finding by the jury that the claim was well founded. It is argued that it was error to submit this claim to the jury for four reasons: first, because Sullivan county was not within any of the inspection districts created by the act of 1891, and was therefore not subject to the act; second, because the act applies only to collieries and mines where more than ten men are employed, and there was no proof that the defendant's colliery belonged to this class ; third, because the statute only gives a right of action for the " direct damages," the party complaining " may have sustained " and there was no proof that the plaintiffs had sustained any of that character; fourth, because their statement was not broad enough to include this claim. The last objection is well taken. As defined in the excerpt from the charge above quoted the claim is based on the alleged failure of the defendant to regard the provisions of the act of assembly in mining the coal on his lands, the specific violation of the statute being that he did not leave a pillar of

coal or barrier wall upon his side of the line sufficient to protect the men in the adjoining property, or the mine of the plaintiffs, in case of its being opened and worked. We have already shown that the plaintiff's statement relates exclusively to the mining of coal on their land, and the injury to their mine or vein of coal caused by the manner in which that coal was mined. There is nothing in the statement to give notice that the plaintiffs intended to claim damages for the defendant's breach of a statutory duty to do or omit something in the mining of coal upon his own land which it was not his duty to do or omit at common law. Therefore, without discussing the question whether such breach of statutory duty was shown as would entitle the plaintiffs to recover in an action which it was declared upon, we conclude that under the pleadings there could be no recovery therefor in this action. The fourth, so far as it relates to this feature of the case, and the tenth, eleventh, thirteenth, fourteenth and fifteenth assignments are sustained. It is argued that even if there was error in submitting this portion of the plaintiffs' claim to the jury, it was harmless and therefore not ground for reversal, because it is apparent that the jury found their verdict by trebling the single damages proved as the result of the direct trespass. There is much reason for believing that they arrived at their verdict without allowing anything on account of the "barrier billar" claim, but we cannot assert it with certainty. Besides that, the case must go back for another trial for the reasons stated in disposing of the eighth assignment.

In the view we take of the case it seems unnecessary to prolong this opinion by a discussion of the question raised by the point quoted in the sixteenth assignment. The case does not turn on that question. We remark, however, that we are not to be understood as deciding that the learned judge erred in his conclusion that "the intention of the act of 1891 was to include all the anthracite region."

We find no substantial error in any of the rulings upon evidence or instructions to the jury complained of excepting those we have specially noticed. The court was clearly right in refusing binding instructions for the defendant.

Judgment reversed and venire facias de novo awarded.